(47 App. Div. 146.)

## OSTERHOUDT v. SOUTHERN PAC. CO.

(Supreme Court, Appellate Division, Third Department. January 8, 1900.)

**1. CARRIERS—DELIVERY—EVIDENCE.**

Where a carrier, by direction of the consignee, delivers cars loaded with stone to a connecting carrier, which moves the cars back and forth over its tracks for a considerable time before delivery to the consignee, a memorandum of the number of stones broken at the time of final delivery is not competent against the first carrier in an action for negligently transporting the stone, the delivery to the second carrier being delivery to the consignee.

**2. SAME—CLAIMS FOR DAMAGE.**

In an action against a carrier for breakage of stone in transit, proof that the consignor had presented other claims for breakage, which were paid, was incompetent to show defendant's knowledge of the ownership of the property, there being no dispute as to the ownership, or defendant's knowledge thereof.

**3. SAME—PRESENTMENT OF CLAIM.**

That a shipping contract required a presentation of claims within an unreasonably short time does not relieve the shipper from presenting his claims within a reasonable time.

**4. SAME—NOTICE.**

The consignor of 32 cargoes, instead of giving notice from time to time of the damage to each cargo, waited till nearly three months after the last shipment, and ten months after the first, and then bunched the claims, without indicating to which shipments the damage was done. *Held*, that this was not a reasonable compliance with the terms of a shipping contract requiring claims to be presented within a time assumed to be unreasonably short.

**5. SAME—BURDEN OF PROOF.**

The burden of showing compliance with a shipping contract requiring presentation of claims for damage to the carrier is on the shipper seeking to recover therefor; and this, though he did not sue on the written contract, but alleged a contract in general terms, and the carrier set up the contract in its answer.

Appeal from trial term, Ulster county.

Action by Julius Osterhoudt against the Southern Pacific Company. From a judgment for plaintiff, defendant appeals. Reversed.

The defendant is a foreign corporation created under the laws of the state of Kentucky, and is a common carrier for hire. The plaintiff's complaint alleges that at various times between the 1st day of April, 1893, and the 7th day of May, 1894, the defendant, for a reasonable compensation, agreed to be paid to it by the plaintiff, agreed safely to carry to New Orleans, in the state of Louisiana, and there deliver to the Rosetta Gravel, Paving & Improvement Company or order, certain goods and merchandise and property of the plaintiff, consisting of bluestone, which the plaintiff then and there, at said various dates, delivered to the defendant, which received the same to transport and deliver in the manner aforesaid; that the defendant did not safely carry and deliver the said goods and merchandise, but so negligently, carelessly, and improperly loaded, stowed, and carried the same that, in the course of the transportation, for want of due care, and on account of its negligence and carelessness, much of the same was broken and destroyed, so as to become valueless, to the damage of the plaintiff in the sum of $1,491.88. It appears that the defendant has a line of vessels by which it transports merchandise to New Orleans, Galveston, and other Southern cities. The plaintiff shipped his bluestone from Kingston to New York City, and it was there loaded upon the defendant's vessels, and by them taken to Algiers, across the river from the main portion of the city of New Orleans. When it arrived at Algiers it was unloaded from the vessel upon flat cars. These cars were placed upon a ferry-

boat, by means of which they were transported across the river, and taken from the ferryboat to a railroad, which appears to have been owned or controlled by the defendant. This road, in turn, connected with a belt-line railroad, which apparently encircles New Orleans, and which is owned and operated by the Illinois Central Railroad Company. The cars containing the stone were delivered upon the tracks of the Illinois Central Belt Line, and thence taken either to the yard of the Rosetta Gravel, Paving & Improvement Company, or to the streets they were engaged in paving. There was conflicting evidence as to the proper way of loading bluestone, both upon the vessels and upon the cars, to insure its safe transportation. Further facts will be referred to in the opinion. The jury found a verdict in favor of the plaintiff for $1,349, and from the judgment entered thereon, and from an order denying a motion for a new trial, made upon the minutes, the defendant appeals to this court.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and KELLOGG, JJ.

Maxwell Evarts (A. T. Clearwater, of counsel), for appellant.
Linson & Van Buren (John J. Linson, of counsel), for respondent.

HERRICK, J. I think it was practically undisputed upon the trial that the defendant delivered the stone consigned to the Rosetta Gravel, Paving & Improvement Company to the Illinois Central Railroad Company, by the direction of said Rosetta Company, and that such stone was then transported either to the yard of said Rosetta Company, or to the street or streets where it was engaged in doing work, and where said stone was required. The delivery by the defendant to the Illinois Central Railroad Company, pursuant to such directions, was a delivery to the consignee.

There was evidence to show that the cars containing such stone remained for a considerable length of time upon the tracks of the Illinois Central Railroad Company; that there was at times an accumulation of 60 or more cars upon such tracks. And there was evidence from which the jury could have found that those cars were moved back and forth, from time to time, over the tracks of the Illinois Central Railroad Company, before the stone was finally delivered by it to the Rosetta Company. There was no evidence given by the plaintiff of the number of stones broken prior to its delivery upon the tracks of the Illinois Central Railroad Company. There was, however, a memorandum of the number of broken stone made by the Rosetta Company at the time such stone was delivered, either at its yard or upon the streets where it was being used. This memorandum consisted of a statement made to the plaintiff by the Rosetta Company of the stone it claimed to have been broken. Its reception in evidence was objected to by the defendant, upon the ground that it was incompetent; that it was not an original memorandum, being a copy of a copy of other memoranda; and upon the ground that it was res inter alios acta; and, furthermore, that there was nothing to indicate when the stone was broken. The objection was overruled, and the memorandum received in evidence. The memorandum so offered in evidence in fact constituted the basis of the plaintiff's claim for damages. The plaintiff thereafter, as a witness, was permitted to give the value per foot of the stone mentioned in the memorandum as having been broken, and the valuation so made up, with the interest thereon from the date of the presentation of the claim, con-

stitute the amount for which the jury rendered their verdict. I think the defendant's objection to the reception of this memorandum in evidence should have been sustained. Assuming it to have been otherwise admissible in evidence, it was not evidence of the amount of stone broken at the time the defendant delivered it to the Illinois Central Railroad Company, which, as before stated, was a delivery to the consignee.

The plaintiff was also permitted to prove that he presented claims for breakage of stone shipped in the year 1892, and that such claims were paid. The questions eliciting this evidence were duly objected to by the defendant, and, upon such objections being made, the plaintiff's counsel stated that the testimony was offered "solely on the question of the defendant's knowledge of the ownership of the goods in question"; whereupon the objections were overruled, and the testimony received. After its reception, the defendant moved to strike it out, upon the same ground upon which it had been objected to, which motion was denied. This evidence was not pertinent to any fact in issue in the case. There was no dispute as to the ownership of the property, or of the defendant's knowledge of the ownership of the property, in question; it was not one of the issues in the case. It should not have been received in the first instance. It was also error to refuse to strike it out after it had been received.

There is, however, another question in the case still more serious than those heretofore referred to, upon which rests the plaintiff's entire cause of action. This question was raised in various forms by the defendant,—by motion for a nonsuit, by requests to charge, and by exceptions to portions of the charge made. But it can be disposed of without setting forth or discussing the terms of these motions, requests, and exceptions. The defendant's bills of lading contain the following provisions:

"It is expressly stipulated that, in case any claim shall arise against said steamship for loss or damage to within merchandise while on the voyage, such claim (in all cases to be based on the value of the articles at the port of shipment upon the date thereof) shall be preferred at the office of the steamer's agent within three days after the delivery of the merchandise; failing in which, such loss or damage shall be deemed to be waived, and the steamship and owners discharged therefrom." "And all claims for loss or damage shall be made within ten days after the delivery of goods, to be made to the agent of the railroad company nearest to the place of destination, in writing, and shall be estimated on the basis of the value of the articles at the point of shipment upon the date thereof."

The defendant operates both a steamship line and a railroad line or lines, and it will be observed that two classes of claims are provided for,—one arising from loss or damage "while on the voyage," which contemplates loss or damage to merchandise while on shipboard; the other evidently contemplates loss or damage to goods while being transported over the lines of railroad. The first is a three-days notice; the other is a ten-days notice. "As a general rule, the bill of lading given by a carrier to, and accepted by, the shipper of goods, contains the contract for carriage, and, in the absence of fraud, imposition, or mistake, the parties are concluded by its terms as there expressed." Jennings v. Railroad Co., 127 N. Y. 438–446,

28 N. E. 396. "It. is legitimate for a common carrier, by contract with the shipper, to provide for a reasonable time within which notice of claim for loss or damage shall be given as a condition of liability, and the manner of giving it." Id., 127 N. Y. 438–452, 28 N. E. 398. Such agreements are not against the policy of the law. They do not relieve carriers from any part of their obligation as common carriers. They are bound to the same diligence, fidelity, and care as they would be required to exercise if no such stipulation had been made. All that the stipulation requires is that the shipper shall make his claim in season to enable the carrier to ascertain the facts, and it specifies what that time shall be. Express Co. v. Caldwell, 21 Wall. 264–272, 22 L. Ed. 556. Of the right to make conditions of this character, there can now be no question; the only question that can arise is as to whether the condition is a reasonable one. As the case stands, I do not think we are called upon to pass upon the question as to whether the time for giving notice and making claims specified in the defendant's bills of lading was reasonable or not. It had a right to specify some time within which such notice of claims should be made, and, if it required such notice to be given within an unreasonably short time, it would not relieve the shipper from giving any notice whatever of such claims, but it would still require him to give notice of claims within a reasonable time; that is, he must, at least, comply with the requirement to the extent that he reasonably can. Matthews v. Insurance Co., 154 N. Y. 449–463, 48 N. E. 751, 39 L. R. A. 433. The obvious purpose of inserting such conditions in the contract between parties is that the claims shall be made while the transaction is still fresh and easily to be investigated, and it becomes of still more importance where the business between the parties consists of a series of transactions, as the one now under investigation, and where notice of damage committed or injury received during one transaction will enable the carrier to take precautions to prevent its recurrence in the future. The plaintiff says he presented his claims for breakage about March 7, 1894. The defendant says none was presented at any time before the commencement of the suit. But, assuming the statement of the plaintiff to be correct, I do not think there was a reasonable compliance upon his part with the requirements of the contract. The shipment of the stone commenced during the forepart of April, 1893. The bills of lading introduced in evidence were all for the year 1893, being some 32 in number, representing that number of cargoes. Instead of giving notice from time to time of the damage done to the several cargoes, if any, the plaintiff waited until nearly three months after the last shipment, and more than ten months after the first, and more than a month after the presentation of the claims to him by the Rosetta Company, and then the claims were all bunched together, without anything to indicate to what shipment or cargo, or under what bill of lading, the damage was done. To hold that such a presentation of claims is a reasonable compliance with the terms of the contract requiring presentation of claims would be .to entirely defeat the purpose of such requirement.

The plaintiff, however, contends that the defendant cannot avail

itself of the plaintiff's noncompliance with such conditions in the contract, because it did not plead it in its answer. I do not think it was necessary for it to do so. Compliance with the conditions of the contract was a condition to the defendant's liability, and should have been pleaded or proved by the defendant. Requirements of notice of claims, or their presentation within a specified time, are common, both by statute and by contract, and, whether imposed by statute or by contract, must be pleaded by the party seeking to recover. "It is immaterial whether a condition be imposed in the statute giving a right of action, or be provided by contract, or exist by force of some principle of common or statute law; the complaint must, by the settled rules of pleading, state every fact essential to the cause of action." Reining v. City of Buffalo, 102 N. Y. 308–312, 6 N. E. 792. If the plaintiff had brought his action upon the written contract or contracts in this case, it would have been necessary for him to have alleged compliance upon his part with all the conditions in it or them upon his part to be performed, or of some valid reason for nonperformance. "It is essential to the legal statement of such a cause of action that it should show an existing contract, and the performance by the plaintiff of such conditions precedent as are thereby provided, or of some adequate excuse for nonperformance." Bogardus v. Insurance Co., 101 N. Y. 328, 4 N. E. 522. These views are not necessarily in conflict with the case of Westcott v. Fargo, 61 N. Y. 542. There the condition was that the company should not be liable "unless the claim therefor shall be made, in writing, within thirty days from the accruing of the cause of action." The court there said:

"The clause in question assumes that the plaintiff has a cause of action which has already accrued to him before the thirty days commenced to run. In that view, the provision is in the nature of a statute of limitations, and should have been set up in the answer. As that was not done, the defendant cannot avail himself of it."

In this case the conditions do not assume that the plaintiff has a cause of action, or that such cause of action has accrued. It refers to claims which may or may not constitute a cause of action, notice of which is to be given, in order, among other things, that the defendant may ascertain whether there is a cause of action. In the case of Express Co. v. Caldwell, 21 Wall. 264–272, 22 L. Ed. 556, the court says, of a similar condition or stipulation in the contract, that it clearly is not to be regarded as a statute of limitations. I can see no distinction in principle between the notice or presentation of claims here provided for and the notice required in insurance policies, or the notice or presentation of claims against municipal corporations, hereinbefore referred to, and which are held to be conditions precedent which should be pleaded. In this case the plaintiff did not bring his action upon the written contract or contracts containing the conditions, but alleged a contract or agreement in general terms, which, so far as the complaint showed, might or might not be in writing. The answer alleged a written contract, a copy of which is attached to, and made part of, the answer, and that it received and transported the plaintiff's property pursuant to

such contract and subject to its conditions. Upon the trial, it appeared that the property was shipped pursuant to such written contracts. It then became incumbent upon the plaintiff to prove that he had complied with the terms and conditions of such contracts, just as much as it would have been had he originally declared upon such contracts in his complaint. This he failed to do; neither did he show a substantial compliance. It follows, from these views, that the plaintiff is not entitled to recover.

For all these reasons, the judgment should be reversed, and a new trial granted; costs to abide the event. All concur.