### SOUTHERN RY. CO. v. MOORESVILLE COTTON MILLS.

### MOORESVILLE COTTON MILLS v. SOUTHERN RY. CO.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1911. Rehearing Denied May 2, 1911.)

#### Nos. 992, 998.

1. WITNESSES (§ 37*)—COMPETENCY—KNOWLEDGE OF FACTS.
   The correctness of the weights of cars of merchandise, as shown by the records of a railroad company, which was the initial carrier, cannot be proved by the testimony of a witness who did not weigh the cars nor see them weighed nor make the entries of the weights.
   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 80–87; Dec. Dig. § 37.*]

2. CARRIERS (§ 131*)—ACTION AGAINST FOR LOSS OF GOODS—DEFENSES—PLEADING.
   In an action against a railroad company to recover damages for loss and injury to property in shipment, based on its common-law liability as a common carrier, it cannot defend on the ground that plaintiff failed to give notice of the loss within a reasonable time unless such defense is specifically pleaded.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 569–577; Dec. Dig. § 131.*]

3. CARRIERS (§ 125½*)—ACTION AGAINST CARRIER FOR LOSS OF GOODS—DEFENSES—NOTICE OF CLAIM.
   Where the contract between a shipper and carrier contains no stipulation as to the time within which a claim for loss or damage to the shipment must be made, or where such stipulation, if made, is void, the shipper is not required to give notice of his claim, but may sue thereon at any time within that fixed by the statute of limitations of the state.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 544; Dec. Dig. § 125½.*]

In Error and Cross-Error to the Circuit Court of the United States for the Western District of North Carolina, at Statesville.

Action at law by the Mooresville Cotton Mills against the Southern

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Railway Company. Judgment for plaintiff, and both parties bring error. Reversed.

This is an action instituted in the state court and removed therefrom to the United States Circuit Court for the Western District of North Carolina by an order of the state court upon petition of the defendant below. Among other things, in the fifth paragraph of the complaint, it is alleged:

"That at the time of said shipment from Denver, Colo., said machinery was correctly weighed and placed in cars for shipment; that the freight for said shipment as stated on bills of lading was demanded of the plaintiff by the defendant upon delivery of said shipment at Mooresville, N. C., and paid by the plaintiff; that the defendant overcharged the plaintiff in freight the amount of $1,775.40, which said amount was claimed by the defendant as an additional charge for overweight as they claimed; that the said amount of overcharge was unjust and not due the defendant, and the plaintiff paid the same under protest, but was compelled to pay the same in order to get possession of said shipment; that the defendant is thus indebted to the plaintiff upon this count for overcharge in freight in the sum of $1,775.40, and interest on the same at the rate of 6 per centum per annum from the 1st day of March, 1907, until paid."

There were 61 cars of secondhanded machinery shipped, and it was agreed that the plaintiff was to pay so much per hundred pounds on these shipments. The defendant in error (for the purpose of showing that the amounts sought to be collected were based upon weights that were incorrect) offered in evidence the weights of certain of the cars alleged to have been weighed by one of the employés of the initial carrier, the Colorado & Southern Railroad. The agent or employé of the Colorado & Southern, who it is alleged weighed the cars, was not a witness in the case, nor was the original book of entries produced. The number, initial, and weight of each respective car was sent to Denver on a memorandum with other weights which the defendant in error alleged were proper and correct, and it is upon this basis that the defendant in error bases its claim of overcharge in freight rate thereon. The witness, among other things, testified that he did not see the cars weighed, did not weigh any of them, and saw no entries made on the books of the weigher, and, in fact, knew nothing about it other than what appeared in Exhibit F, made by another, and as to which he was permitted to testify.

There was a judgment entered in favor of the plaintiff below for the sum of $750, with interest from the 18th day of October, 1909, and the case is now here on a writ of error.

L. C. Caldwell, for Southern Ry. Co.

Zeb V. Turlington and Geo. B. Nicholson (R. B. McLaughlin, on the brief), for Mooresville Cotton Mills.

Before PRITCHARD, Circuit Judge, and McDOWELL and ROSE, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). The question presented for our consideration is as to whether it was competent for the witness Adams to testify as to the correctness of the statements contained in the paper which was attached to his deposition and marked Exhibit F, and which purported to contain the weights of the cars at the time they were loaded for shipment. In other words, did the witness testify as to facts that were within his own knowledge, or did his testimony depend upon information received from another? The determination of the questions involved in this case depends entirely upon the proper answer to this inquiry.

It appears from the statement of facts that the plaintiff transmitted a list of the cars shipped over the initial carrier, from Denver, to H. A. Johnson, chief clerk of the general freight office of the Colorado

& Southern Railroad, and that in reply thereto he wrote the following letter:

"Your letter of April 23d attaching list of cars shipped over our line from Denver. I return you your memorandum and have noted on same weights of these cars as arrived at over our scales at Denver."

This letter, together with the weights of the cars, were offered in evidence, and the same were identified by the witness. The substance of the testimony of the witness was that he wrote the letter in question; but it should be borne in mind that there is no statement in this letter that the weights are correct. On cross-examination the witness testified that he did not prepare the paper designated "Exhibit F," that he did not weigh the cars personally, and that he did not inspect any of the scales on which these cars were weighed. In other words, it clearly appears from the testimony of the witness that the cars were weighed by another, and that he was not present at the time they were weighed, and all he knew was that which appeared upon the slips of papers furnished him by the person in charge of the records of weight. No one had testified as to what occurred at the time the cars were weighed.

The evidence of the party who weighed the cars could have been procured by the same means employed in securing the evidence of witness Adams, to wit, by deposition; but for some reason the plaintiff failed to avail itself of this testimony.

It is insisted by counsel for plaintiff that, where an unimpeached witness swears to a fact of his own knowledge, "it must be taken that he had competent means of information and knowledge, unless the contrary appears." This proposition is undoubtedly correct; but such is not the state of facts before us. It should be borne in mind that the witness testified that he did not prepare the statement and that he was not present when the cars were weighed. Thus we are informed by the witness that his testimony was not as to facts within his own knowledge, but that his information was derived from a statement made by another in regard to a transaction about which he had no knowledge whatsoever. If, in this instance, the witness had actually weighed the cars and had prepared the statement offered in evidence, he could have referred to the same for the purpose of refreshing his memory as to what actually took place at the time the cars were weighed; but no such state of facts exist, and it cannot therefore be contended that this is a memorandum used for the purpose of refreshing the memory of the witness. If Exhibit F had been eliminated, the witness, according to his own statements, would have been unable to testify as to any material fact connected with the weighing of the cars. In this case the witness on account of information which he had received from another believed that the statements contained in Exhibit F were correct. Evidence of this character is clearly incompetent.

In the case of Jones v. Railroad, 148 N. C. 449, 62 S. E. 521, among other things, the defendant, in order to show the condition of the stock when transferred from one freight conductor to another, on a different part of its system, offered in evidence "the original record of Conductor E. D. Skinner, handling the shipment of stock from

Florence to Wilmington, showing that there was no exception to the condition of the stock at the time of its handling." This evidence was excluded by the court below, and the Supreme Court of the state in passing upon this phase of the question said:

"We have held that a record containing entries made in the usual course of business on the train sheets by the witness (a train dispatcher) from reports telegraphed to him by station agents as to the arrival and departure of trains is admissible for the purpose of showing the position of a train at a certain time. Insurance Company v. Railroad, 138 N. C. 42, 50 S. E. 452, 107 Am. St. Rep. 517. The evidence offered by defendant is far from coming within the principle of that decision. The record was made in that case by the witness himself, who was under oath and subject to cross-examination, and the witness identified it as the record made by him, showing the movement of trains. The report of the case shows that 'the record was offered by defendant in corroboration of witness Hunt, and the court admitted it for that purpose, so instructing the jury.'

"Waiving the confusion in the record as to the identification by proof of this 'original record,' it is certain that the defendant did not offer Conductor Skinner to prove the condition of the animals on his run, and then offer his train record of that run for the purpose of corroborating his evidence.

"It has been held by the Supreme Court of Massachusetts that train dispatchers' records, properly identified, are competent evidence to show the location of a train at a given time; but an examination of the case shows that 'entries from the train sheet, with the testimony of the person who made them, were admitted to show that outward trains passed' at certain hours. Donovan v. Railroad, 158 Mass. 450, 33 N. E. 583.

"These decisions rest upon the idea that as telegraphic messages are read by sound, as well as automatically recorded in symbols, such entries stand upon the same footing as if made from oral statements uttered at the sending station and audible in the dispatcher's office. These cases, for that reason, are to be distinguished from those holding that entries by a servant on his master's books for goods sold are incompetent, unless the servant is called to support the charges and prove the delivery. Miller v. Shay, 145 Mass. 162, 13 N. E. 468, 1 Am. St. Rep. 449.

"There is nothing in the record of a train run or the logbook of a ship which takes the case from the general rule that the entries must be identified, and when so identified they are competent evidence in support of the person who made them.

"As the appellant failed to send up the 'train record,' we are unable to gather exactly what it was expected to prove by it. As we understand it, the record was silent as to the condition of the stock on Conductor Skinner's run. Had he been examined as a witness, his record of the run would have been competent to corroborate and fortify his evidence. As he was not examined, the court properly excluded it."

In the case of Stabler v. Clark, 155 Mich. 26, 118 N. W. 605, which was an appeal from a decree to foreclose a mortgage, the court, in referring to the refusal of the lower court to permit the defendant to testify as to an entry made by his wife showing a payment on the mortgage, said:

"It is to be noted that the book was not used at the hearing as an aid to the recollection of the witness, nor was it claimed or assumed that it was more trustworthy than the present recollection of witnesses. Neither of the defendants professed that they had not exact, independent memory of the narrated facts. Quite the contrary. Mrs. Clark had indeed no knowledge that the money had been paid by her husband, except that she claims he told her he had paid it, and she on the evening of the day in question made the written narrations in the book; nor is the book one of accounts kept in the usual course of a business. It is the settled law in this state that such evidence under such circumstances will not be received. Weaver v. Bromley, 65

Mich. 212 [31 N. W. 839]; Collins v. Shaw, 124 Mich. 474 [83 N. W. 146]. See Wigmore on Evidence, §§ 734–738."

These cases are on all fours with the case at bar. There, as in this instance, it was sought to prove the correctness of a document by a witness who had not prepared the same and who had no knowledge of the transaction upon which the entries or statements were based. We are of opinion that the evidence as offered was clearly incompetent and that the court below erred in not excluding the same.

It further appears from the record that a cross-writ of error was taken from the judgment of the court below based upon the findings of the jury in the sum of $5,000, in favor of the plaintiff below as damages for the loss and detention of the machinery described in the bills of lading. We will now consider the questions brought here for review by the cross-writ of error. The sixth paragraph of the complaint is in the following language:

"That two cars of said shipment of machinery have never yet been delivered to the plaintiff though demanded, and as plaintiff is informed and believed, same has never yet arrived at its destination; that upon the arrival of the remainder of said shipment same was greatly and badly injured, damaged, and destroyed to the great damage to the plaintiff in the sum of $13,161.16, together with interest as follows: From March 1, 1907, until paid, which said damage arose as follows: For machinery lost, injured and damaged in transit; for machinery lost or withheld from the plaintiff as aforesaid and never delivered; for machinery demolished and destroyed by the defendant in transit; for repairs to machinery to replace broken and damaged machinery, demurrage, freights, expenses incurred in connection with replacing broken and injured machinery—all of which, together with said excessive freight charges, as set forth above, is shown in detail by itemized statement hereto attached, marked 'Exhibit A' and made a part of this complaint."

It will be observed that this cause of action is based upon the common-law liability of the defendant as a common carrier by which it is sought to fix the defendant with liability as an insurer; the only exceptions being loss or damage occasioned by the act of God, a public enemy, etc. The plaintiff contends that this action does not grow out of any contract of carriage and is therefore not for damages for any breach of contracts or stipulations embodied in bills of lading for the machinery in question. This contention is borne out by the fourth paragraph of the complaint, in which it is alleged that these shipments were accepted by the defendant under the then published through rates of the respective railroads and other connecting carriers forming through lines, and that the defendant issued to the plaintiff original bills of lading to be produced by the plaintiff at the trial. It nowhere appears in the complaint that the plaintiff relies on any contract of carriage between the parties, nor does it appear that the plaintiff claimed the benefit of any stipulations contained in the various bills of lading. However, there is a reference to the bills of lading in the fourth paragraph of the complaint, and it is insisted by counsel for the defendant that by such reference the bills of lading were incorporated in and became a part of the complaint and were relied upon by the plaintiff for the purpose of recovery; while, on the other hand, it is insisted by counsel for plaintiff that these bills of lading are referred to merely for the purpose of showing the date of shipment and identifying the

property shipped, and that they are employed in the plaintiff's pleadings merely as descriptio res and not as the basis of an action ex contractu. We do not think there is any merit in the defendant's contention as respects this matter.    Brown v. Alsop, 152 N. C. 114, 67 S. E. 261.

As to this cause of action the court submitted four issues to the jury; the first being as to what amount, if any, the plaintiff was entitled to recover of the defendant on account of lost or damaged property.    In response to this issue the jury fixed the damages at $5,000. The remaining issues submitted were as to whether the plaintiff had preferred to the initial carrier or any of the intervening carriers over which the machinery was shipped claim for losses or damages to the machinery within the time stipulated in the bills of lading; the stipulation being 30 days in two instances and 10 in the other.    The jury in response to these issues found that the plaintiff did not prefer its claim within the time stipulated.

Thereupon the plaintiff moved for judgment non obstante veredicto. The court refused to grant this motion, but held that the stipulations contained in the various bills of lading issued by the various railroad companies, requiring the plaintiff to prefer notice of its claim for lost and damaged machinery within 30 days and 10 days after shipment, were void.    In referring to this matter, the court said:

"The court holds as a principle of law that the time limits in the bills of lading, both the 30 days and 10 days, in which to file claim for loss, are unreasonably short, and therefore void; but in view of the fact that plaintiff contracted to give notice of claim, although the time limit is not reasonable, yet the duty devolved upon plaintiff to give such notice within a reasonable time.    Ordinarily what constitutes reasonable time within which to give such notice would be a question of fact for the jury; but in this case the expiration of nine months without notice of claim and the bringing of this suit as the first notice to the defendant the court holds to be as a matter of law a delay so unreasonable as to estop plaintiff's right of recovery.    This conclusion is based upon the line of reasoning pursued in Osterhoudt v. Southern Pacific Railroad Company, 47 App. Div. 146, 62 N. Y. Supp. 134, and upon the case of Deans & Brown v. Atlantic Coast Line Railroad Company [67 S. E. 332], decided by the Supreme Court of North Carolina at the February term, 1910.    In the North Carolina case it will be seen that the court holds it to be the law that although the time limit in the bill of lading is unreasonably short, and therefore void, yet, in the face of such a stipulation, it becomes the duty of the shipper to give notice of loss of, or injury to, property in transit to the carrier within 60 days."

For the reasons stated, the court rendered judgment disallowing the damages found by the jury to be due the plaintiff upon the ground that the plaintiff had not preferred notice of its claim within a reasonable time.

The first assignment of error is as follows:

"The court ruled that by reason of contractual stipulations contained in said bills of lading, set up in defendant's answer, requiring notice of claim, the plaintiff was required to prefer notice of its claim for loss and damage to said machinery within a reasonable time, and that plaintiff was estopped from recovering for failure to prefer notice of claim within a reasonable time, and that the delay from April 15, 1907, to commencement of action was unreasonable, and plaintiff in apt time excepted to said ruling and prayed that this bill of exceptions be signed and sealed, and the same is signed and sealed accordingly."

In view of the pleadings and evidence, the question naturally arises as to whether, after having declared the stipulations relied upon by the defendant to be void, it was within the power of the court to find as a fact that the claims were not preferred within a reasonable time. As to whether notice of claim by the plaintiff was preferred within a reasonable time was a question of fact to be determined by the jury, and furthermore there was nothing in the pleadings which raised this question and upon which an issue could have been submitted, nor was there sufficient evidence to support this finding of fact. This being an action based on the common-law liability of the defendant, and if the defendant relied upon the defense that the claims were not preferred within a reasonable length of time, it was incumbent upon it, if it desired to avail itself of such defense, to have specifically pleaded the same.

In the case of Peary Lee Moss v. North Carolina Railroad Company, 122 N. C. 889, 29 S. E. 410, the court thus states the rule:

"* * * A defendant is called upon to answer the accusations made against him, but he is not called upon, and it would be unreasonable to do so, to anticipate and come prepared to defend any other accusation. It is a settled maxim of law that proof without allegation is as unavailable as allegation without proof. There is nothing in the answer to assist the complaint, if the facts were as the charge assumes them to be. Conley v. Railroad Company, 109 N. C. 692 [14 S. E. 303]. 'A complaint proceeding upon one theory will not authorize a recovery upon another and entirely distinct and independent theory.' 4 Elliott on Railroads, § 1954."

This rule applies to a defendant as well as a plaintiff where a defense of this character is relied upon. Even if this were a valid defense, the defendant could not avail itself of such defense without specifically pleading the same. As we have said, there being no pleading of any character which justified an issue of this kind, the court below was in error in ruling as it did upon this question. Hoye v. Pa. R. R. et al., 191 N. Y. 101, 83 N. E. 586, 17 L. R. A. (N. S.) 641.

It appears that there were nine bills of lading issued by the Union Pacific Railroad Company as an initial carrier which contained no stipulations as to claims for lost or damaged machinery. It also further appears that a considerable proportion of the machinery was shipped over this line, and there is evidence tending to show that much of this machinery was damaged or lost. There was nothing in the pleadings upon which to base an issue as to this phase of the question, and evidence relating to the same was submitted to the jury, and it is reasonable to assume that these shipments were considered by the jury in determining the amount found to be due the plaintiff in response to the second issue.

The court below evidently based its ruling upon the case of Deans v. A. C. L. Ry. Co., reported in 67 S. E. (N. C.) 332. However, we think that case is easily distinguished from the case at bar. There the stipulation was in the following language:

"Claims for loss or damage must be made in writing to the agent at point of delivery promptly after the arrival of the property, and if delayed for more than thirty days after the delivery of the property, or after due time for the delivery thereof, the carrier hereunder shall be liable in any event."

In that case the shipper stipulated with the carrier that, in the event of loss or damage, claim therefor should be made promptly. The shipper entered into a contract whereby he not only agreed to give notice, but that it would be given promptly after the arrival of the shipment at its destination, and, while there is a provision as to not delaying notice more than 30 days, it was merely directory and was a limitation as to the time within which notice should be given being in the nature of a definition of the word "promptly" as used in that connection. Therefore, if the provisions as to not delaying notice for more than 30 days stricken from the stipulations, there would still remain the provision that "claims for loss or damage must be made in writing to the agent at point of delivery promptly after the arrival of the property," and it was no doubt upon that theory the Supreme Court of North Carolina held that under such conditions to deliver the goods promptly meant within a reasonable length of time.

However, the only stipulations contained in the bills of lading in this case are to the effect that claims must be preferred within 10 and 30 days respectively, and this provision was declared to be void by the court below in conformity with the decisions of the Supreme Court of North Carolina. The court having held that these stipulations were void, nothing remained in the stipulations upon which to base the contention that claim should have been preferred within a reasonable time. The ruling of the court in this respect is in harmony with the North Carolina decisions.

The case of the Dixie Cigar Co. v. Southern Express Company, 120 N. C. 348, 27 S. E. 73, 58 Am. St. Rep. 795, was instituted for the recovery of the value of a package which plaintiff delivered to the defendant in April, 1893, to be shipped to Ratan, Mexico, and which was not delivered as agreed. The receipt given by the express company contained the following stipulation:

"In no event shall the Southern Express Company be liable for any loss or damage, unless the claim therefor shall be presented to them in writing at this office within thirty days after this date, in a statement to which this receipt shall be attached."

The trial court held that the stipulation in the receipt as to giving 30 days' notice was unreasonable, and that the failure of the plaintiff to comply therewith would not prevent a recovery. There was a verdict in favor of the plaintiff. The Supreme Court in that case said:

"The stipulation here being void, and the action having been brought within three years, the plaintiff was entitled to recover."

Also, in the case of the United States Watch Case Company v. Southern Express Company, reported in 120 N. C. 351, 27 S. E. 74, the defendant relied upon a stipulation which was held to be void. At the close of the case the court said:

"The action having been brought within three years, the plaintiff is entitled to recover."

The decision in the case of Deans v. A. C. L. Ry. Co., supra, does not conflict with the principles announced in the foregoing cases.

It appearing that the bills of lading in this case contained no provision other than the one declaring that no claim can be made unless

preferred with the 10 days or the 30 days as the case may be, under the circumstances the consignee was not under obligation to prefer his claim in any other time than that fixed by the statute of limitations of the state. This is undoubtedly true at common law. The fact that the stipulation is absolutely void cannot in any wise change the common law. Under these circumstances, the court below erred in refusing to grant the motion for judgment non obstante veredicto.

For the reasons stated, these judgments brought here on writ of error and cross-writ of error, respectively, are reversed, and the same are remanded for further proceedings in accordance with the views herein expressed.

McDOWELL, District Judge, concurs in the conclusion reached.