## THE WESTMINSTER.

(Circuit Court of Appeals, Third Circuit. February 11, 1904.)

### No. 23.

**1. SHIPPING—DAMAGE TO CARGO—PERILS OF SEA.**

In seeking to be relieved from liability for damage to cargo in transit, under the exception of perils of the sea, the shipowner, as carrier, is bound to prove that the injuries were the result of such untoward circumstances as could not have been anticipated and guarded against by the exercise of ordinary care and prudence.

**2. SAME—CONDITIONS OF BILL OF LADING REQUIRING NOTICE OF CLAIM.**

A provision in a bill of lading that "neither the steamship owners nor their agents nor any of their servants are to be liable * * * for any claim notice of which is not given before the removal of the goods" is to be construed as requiring such notice to be given before the removal of the goods from the dock, and imposes a valid condition precedent to the right to recover for damage to cargo either against the owners personally, or by a suit in rem, where, under the circumstances of the case, such condition is just and reasonable—as where the damage was known when the cargo was discharged.

**3. SAME—BURDEN OF PROOF.**

When the failure to give such notice is set up by respondent as a defense, the burden rests upon libelant to prove the notice, as a condition to the right of recovery, it being an affirmative fact peculiarly within his knowledge.

**4. SAME—WAIVER.**

The failure of the owners to insist on the condition in other cases does not constitute a waiver in favor of libelant, where it is not shown that he knew the fact and was misled by it.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 116 Fed. 123.

H. L. Cheney, for appellants.

J. P. Kirlin and Henry R. Edmunds, for appellees.

Before ACHESON and GRAY, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. This was a libel filed by the appellants against the steamship City of Westminster to recover damages for injury to certain bales of jute cloth and burlap on the voyage from London to Philadelphia, by reason, as alleged, of improper stowage. The passage was a stormy one, and the injury received, which was unquestioned, was attributed by the claimant, not to bad stowage, which was denied, but to the extreme severity of the weather encountered. Notwithstanding the evidence upon the subject, we incline to the view that, if the case were to be disposed of upon this issue, the merits would be found with the libelants. The carriers were insurers, and the cargo in question was injured in transit. In seeking to be relieved from liability under the exception of perils of the sea, the shipowners were bound to prove that the injuries were the result of such untoward circumstances as could not have been anticipated and guarded against by the exercise of ordinary care and prudence. The voyage was, no doubt, tempestuous, but not beyond that which was to be expected on the Atlantic in March, and there is evidence to show that the bales had begun to shift before the severe weather came on. If they had been properly stowed by the stevedore at the outstart, they would not have required the attention which they did within a few days after leaving London; and if, after they began to shift, they were shored and tommed to the additional extent described by the ship's carpenter, it is difficult to see how they could get out of place and be injured so long as the ship held together. The evidence on the subject proves too much. It shows such precautions taken as must have secured the cargo beyond a peradventure in almost any weather, and certainly in that of the character described. The burden resting on the carriers would hardly seem to be met by this showing.

But we are relieved from the necessity of passing definitely upon this question, and allude to it merely to show that the case is properly made to turn on the point on which it was disposed of in the court below. The libel was dismissed on the ground that no notice of claim was given by the consignees before the removal of the goods. This is in exact accord with the ruling of this court in the case of The St. Hubert, 107 Fed. 727, 46 C. C. A. 603, from which it cannot be distinguished. The bill of lading there, as here, provided that neither the shipowners nor their agents or servants should be liable "for any claim notice of which is not given before the removal of the goods"; and it was held that without such notice there could be no recovery. The purpose of the provision, as there pointed out by Gray, J., is that the shipowners may know, not merely whether there is damage—for which no demand may ever be made—but whether any claim for damages is asserted by the consignee, so that the necessary investigation can be made to ascertain the facts while they are fresh. The notice stipulated for is not of the fact of damage, more or less, but of the intent to hold the carrier liable for it, which, on failure to give notice, the latter, in view of the stipulation, may well regard as being waived.

No doubt, to sustain it as a binding condition in any given case, it must appear from the circumstances which there prevail that it was just and reasonable. Queen of the Pacific, 180 U. S. 49, 21 Sup. Ct. 278, 45 L. Ed. 419. But what is there in the present instance to show that it was not? It was known at once on the arrival of the ship and the discharge of the cargo that the goods were seriously damaged, which was so manifest that an order for a survey was obtained, and the libelants, as insurers, assumed and paid the loss. There was nothing, therefore, to prevent the parties interested—consignees or underwriters—from making the necessary claim, as well as stating its extent. Prima facie, the carriers were liable, and the burden was on them to clear themselves (The Majestic, 166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039), which was sufficient of itself to justify the claim, without taking time to investigate it. No doubt, the consignees were entitled to a suitable opportunity to make an intelligent claim, but they had it. Whatever may be the case where the injury is latent and the liability doubtful, neither can be alleged of what, on the face of things, appeared here.

The reasonableness of the condition is not to be destroyed by the extreme construction that claim must be made before the removal of the goods from the ship. Of two possible interpretations, that is to be adopted which will uphold the contract, rather than subvert it. The stipulation is that notice shall be given "before removal of the goods." It does not say removal from where, and its terms are satisfied, as pointed out in The St. Hubert, supra, by notice before a removal from the place where the goods are deposited on the dock or wharf. If the view taken by the English courts differs from this, we are not bound by it; but in one case, at least (Moore v. Harris, L. R. 1 App. Cases, 318), it is the same. It is true that even with this construction the time limit is a short one, but not so short in the present instance, as is shown above, as to abridge unduly the rights of the parties. Provisions equally stringent have been sustained in several cases. In Moore v. Harris, L. R. 1 App. Cases, 318, and in Angel v. Cunard Steamship Co. (D. C.) 55 Fed. 1005, the condition—the same as here—was for notice before removal. So was it, with regard to live stock shipments, in Southern Ry. v. Adams, 115 Ga. 705, 42 S. E. 35; Wood v. Southern Ry., 118 N. C. 1056, 24 S. E. 704; Wichita Ry. v. Koch, 47 Kan. 753, 28 Pac. 1013; and Rice v. Kansas Pacific Ry., 63 Mo. 314; while in Kyle v. Buffalo R. R., 16 U. C. C. P. 76, a 24-hour limit; in St. Louis R. R. v. Hurst, 67 Ark. 407, 55 S. W. 215, a 30-hour limit; in Lewis v. Great West. Ry., 5 Hurlst. & Norm. 867, and Moore v. Great Northern R. R., L. R: 8 Irish 95, a 3-days limit; and in Black v. Wabash R. R., 111 Ill. 351, 53 Am. Rep. 628, one of 5 days—were all enforced. We doubt whether, as held by the learned district judge in the case of The St. Hubert (D. C.) 102 Fed. 362, the provision is divisible, by which the part calling for notice may be held good, and that requiring it to be given within a certain time be disregarded. It must be taken, in our judgment, as it stands, and held reasonable or unreasonable as a whole, which the attendant circumstances must determine. But even so, we see no occasion to question its entire fairness here.

It is said, however, that there was no satisfactory evidence that notice

had not been given, and that the rule with regard to the burden of proof was not properly applied. But the confusion, if any, grows out of supposing that want of notice was to be proved in the first instance by the respondent. The giving of notice was an affirmative fact peculiarly within the knowledge of the libelants, both with regard to the time when, and the agent or representative of the shipowners to whom, it was given; and the want of it having been set up in the answer—whether original or amended, does not matter—it was incumbent on the libelants to prove it, as a condition of the right to recover. 6 Cycl. Law & Proc. 506; Metropolitan Trust Co. v. Toledo R. R. (C. C.) 107 Fed. 628; U. S. Express Co. v. Harris, 51 Ind. 127; Osterhoudt v. Southern Pacific Co., 47 App. Div. 146, 62 N. Y. Supp. 134. Even if the stipulation could be regarded as in the nature of a statute of limitations (Westcott v. Fargo, 61 N. Y. 542, 19 Am. Rep. 300; Southern Express Co. v. Caperton, 44 Ala. 101, 4 Am. Rep. 118), which it is declared in Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556, that it is not, still, having been pleaded, and the libelants thereby notified that it would be relied upon, they were bound by every rule to show compliance, or that which would excuse it, or be barred.

It is further urged that the condition requiring notice had been waived. But the only ground for this is the alleged failure of the agents of the line to assert it upon prior occasions, which is altogether insufficient. Even if their power to dispense with so important a provision of the contract of affreightment was shown, the mere fact that they had not seen fit to insist upon it in other instances amounts to nothing in this. The circumstances which led them to do so, even if they could be inquired into, are not before us; nor is it contended that the consignees or underwriters knew of the practice, and relied upon it as the basis of their own inaction, to their hurt, which might possibly have availed them something if they had, but cannot as it is.

The decree of the District Court dismissing the libel is affirmed.