## THE NICETO.

### (District Court, S. D. New York. January 4, 1905.)

1. SHIPPING—SHORTAGE OF CARGO—TIME FOR PRESENTING CLAIM.

A provision of a bill of lading that the carrier shall not be liable for any claim for loss or damage "unless presented within 48 hours after landing of or failure to deliver the goods," does not preclude a recovery for shortage of cargo, although no claim therefor was made within the specified time after discharge, where the ship placed the cargo in store, taking receipts therefor, and as soon as the shortage came to the attention of the consignee it presented a claim therefor to the agent of the line in whose name the bill of lading was issued, who admitted liability.

2. SAME—DAMAGE TO CARGO—ALLEGED IMPROPER STOWAGE.

Damage to a cargo of sugar shipped in bags from a Cuban port to New York *held* to have been due to the sweating of the cargo and ship, for which the vessel was not liable, and not to any lack of care in stowing.

In Admiralty. Suit to recover for shortage of cargo and damage to other portions.

Black & Kneeland, for libellant.
Convers & Kirlin and John M. Woolsey, for claimant.

ADAMS, District Judge. This action was brought by the Hormiguero Central Company against the steamship Niceto, to recover for a shortage of 8 bags of a sugar cargo and alleged damage to some 2212 of the bags of the same, through being wet. The sugar was laden on the steamship on the 10th day of June, 1903. She was then lying in the port of Cienfuegos, Cuba. The sugar was to be delivered in New York in the like good order and condition in which it was received, perils of the seas etc., excepted. The steamship arrived in New York on or about the 26th day of June and was duly discharged.

It is alleged by the libellant that the damage was not caused or due to any lawfully excepted peril but was owing to fault and neglect in the loading, stowing, care and custody of the sugar; particularly to the want of care in the stowage, in that wet logs of mahogany and other woods were stowed upon and in contact with the sugar, without sufficient dunnage to prevent injury.

The answer, after some formal denials, admits the shipment and that the bills of lading recited that the sugar was shipped in apparent good order and condition and then sets up the exceptive provisions contained in the contract, some of which are as follows:

"2. It is also mutually agreed that the carrier shall not be liable either as carrier, bailee or otherwise, for any loss or damage occasioned: by * * * heating, shrinking, effects of climate, * * * or any loss or damage aris-

ing from the nature of the goods or cargo, * * * nor for articles perishable in their nature; * * *

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

4. It is also mutually agreed that this shipment is subject to all the terms and provisions of, and all the exemptions from liability contained in, the Act of Congress of the United States, approved on the 13th day of February, 1893, and entitled 'An Act relating to the navigation of vessels, etc.'; and anything contained herein repugnant thereto is hereby waived.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

11. Also, that the carrier shall not be liable for any claim for loss or damage, even if arising from negligence, unless presented within 48 hours after landing of, or failure to deliver, the goods."

The answer, after reciting the exceptions contained in the bill of lading, further alleges that the sugar was properly stowed and dunnaged and that all due diligence was used to have the steamship properly equipped and in every way seaworthy and fitted for the voyage and if there was any damage to the sugar, it was due to some cause within the exceptions of the bill of lading, and that by reason thereof the steamship is not liable.

The answer further alleges, among other matters not necessary to consider, that if there was any damage to the sugar not within the excepted perils, it was due to sweat or the nature of the goods and to the insufficiency of their packages and further that no notice of any claim was given within 48 hours after the landing of the sugar, and that the claim is barred by the express terms of the contract.

There are only two questions involved in the case, viz: (1) whether the libellant is entitled to recover for the nondelivered sugar and (2) whether there can be any recovery for the damage to the sugar.

1. It appears that there was a shortage in the delivery of 8 bags of sugar. The facts in this connection seem to be, that a claim for the damage was made almost immediately but none at the same time for the short delivery. The claimant contends that this claim for damages did not include notice of a claim for short delivery. That seems to be so, but obviously no claim of the kind could be made until the cargo was discharged, and an opportunity given to ascertain the extent of the delivery. It appears that the cargo was put into store and receipts taken therefrom by the ship. When the matter of short delivery came to the attention of the libellant, notice was duly given, dated July 20, 1903, to James E. Ward & Co., incorporated. It wrote a letter dated the same day to the libellant stating:

"As regards the shortage of 8 bags, we will pay for same upon receipt of your bill, with the understanding that if the eight bags should turn out when this sugar is taken out of store, you will return us value of same, as per bill rendered."

The claimant of the steamship, however, defends the claim upon the ground that Ward & Co. were not authorized to waive the notification clause, contained in the 11th clause of the bill of lading, and could not in any way vary the rights of the ship. Although the ship was sailing on the owner's account, the bill of lading is that of the N. Y. & Cuba Mail S. S. Co. and contains the name of Jas. E. Ward & Co., as its agent. The contract of carriage was with that line and I fail to see any merit in the claimant's contention. Excepting Ward & Co.,

there was apparently no one to whom the libellant could look in such a matter. In this respect the libellant is entitled to succeed.

2. With respect to the damage, there is no real controversy save as to its character, that is whether the damage arose from some failure to exercise proper care on the part of the ship or was due to the inherent quality of the cargo. That it was damaged from some cause to a considerable extent is made clear by the testimony. The cause is a matter of sharp conflict, the libellant contending that it arose through the loading of wet logs of mahogany in the hold, close to, or in contact with, the sugar, and from contact of the sugar while wet from the logs with fustic, a yellow dye wood. The claimant contends on the other hand, that the damage was a pure case of sweat, incident to such cargoes.

It appears that the sugar was taken aboard at Cienfuegos from lighters. At Manzanillo certain mahogany logs which were rafted out to the ship, were lifted out of the water over the side of the ship by her winches, and stowed in No. 3 between decks, being put there through No. 3 main deck hatch. These logs were squared and cleared of bark. Other wood which was loaded there was brought to the ship by lighters. This included the fustic, which was stowed in the square of No. 1 hatch.

The deck hatches were kept open in the day time during the voyage, excepting a few days of bad weather. There is no substantial question about the proper ventilation of the ship. There was an air space of 2 or 3 feet between the forward end of the mahogany logs and the sugar. Contact was not permitted in the stowing. When the cargo was discharged there was still the same space between the mahogany and the sugar. The logs went aboard wet so that several buckets of water drained off them on the deck, but the water was sponged up and none reached the cargo in this way. The mahogany, being a close grained wood, held very little, if any, water; moreover, the hatch of the between decks was carefully covered and secured with tarpaulins, which protected the sugar beneath from any drippings from the logs, even if they exuded any water after they were loaded.

When the steamer was loaded she drew 23 feet 6 inches forward and 24 feet 4 inches aft. Upon arrival in New York, after having burned the coal necessary for the voyage, she drew the same forward and 23 feet 8 inches aft, so that at all times the drainage from the logs, if any, was towards the after end of the steamer and away from the sugar, forward of the machinery, so that any moisture from the logs, if there were any, would not reach the sugar.

When the ship reached New York, she was discharged by the employees of the Ward Line, who have had great experience in handling Cuban cargoes. They testify that the damage was merely a stain, to no greater extent than usual, and due to the pressure and heating common to all sugar cargoes. They all testify that the practice of stowing mahogany logs, taken out of the water from along side the ship, was also common and not attendant with any risk to the sugar, provided there was no contact between the wet logs and the sugar. The question is, they say, one of contact, not of absorption through the atmosphere. They say that from every hold of the ship, whether there

were mahogany logs there or not, stained bags came out from beside clean ones and it was attributed by them to the sweating of the sugar itself, and the pressure of the bags.

The testimony on behalf of the claimant appears to be entitled to credit.

It is also shown by the expert testimony adduced on behalf of the claimant, that it is common and believed to be good stowage to put fustic in contact with sugar bags and that no bad results follow, according to their experience.

It seems clear that the stains on the bags were owing to the heating of the sugar and the sweat of the cargo as well of the ship, and was not due to any negligence in stowing. The testimony shows that damage of this kind is not at all unusual in Cuban cargoes, which are subject to change from warm to colder weather north of Hatteras. It was also probably somewhat due to the necessity of closing and battening down of the hatches on account of the adverse weather met with on the voyage. I conclude that the damage arose from sweat, largely due to the inherent nature of the sugar, for which the ship is not liable.

There should be a decree in favor of the libellant for the lost bags of sugar, with an order of reference.