## THE D. HARVEY.

ERIE BOATMEN'S TRANSP. CO., Limited, v. GENERAL SUPPLY & CONSTRUCTION CO.

(District Court, S. D. New York. June 15, 1905.)

1. SHIPPING—DAMAGE TO CARGO—NOTICE OF CLAIM.
   A provision of a bill of lading that the vessel should not be liable for damage to the cargo unless written claim for the loss should be made within 30 days is sufficiently complied with by a letter sent to the carrier within 30 days by the proctor for the cargo owner, stating that he held a claim for damage to the cargo for collection, where both parties had actual knowledge of the damage at the time of discharge.

   [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, § 496.]

2. SAME—BREAKAGE IN LOADING.
   Where a cargo of cement in bags, which were in fairly good condition, was loaded by the vessel, she is liable for damage arising from the breaking of the bags, due to the negligent manner in which they were handled.

3. SAME—DAMAGE TO CEMENT CARGO BY WETTING.
   A vessel is liable for damage to a cargo of cement which was received in good condition, but was lumpy and set when delivered, due to its having been wet, in the absence of explanation of the manner in which it became wet.

   [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 452–454, 479–483.]

In Admiralty. Suit for freight and cross-suit for damage to cargo.

Hyland & Zabriskie, for Erie Boatmen's Transp. Co. and the D. Harvey.

James J. Macklin and La Roy S. Gove, for General Supply & Construction Co.

ADAMS, District Judge. An action was brought by the Erie Boatmen's Transportation Company, Limited, against The General

Supply Company to recover the freight amounting to $114.50 on 3000 bags of cement transported by the canal boat D. Harvey from Jersey City to Schenectady, New York, in July 1903. There was also a charge of $4 for insurance procured by the libellant for the Supply Company and a further charge of $20 for 4 days demurrage @ $5 each for detention in loading and discharging, making a total claim of $138.50, no part of which is seriously disputed.

The controversy in the matter arises out of a claim on the part of the Supply Company against the canal boat to recover certain damages said to have arisen from an injury to the cargo of cement during the voyage, amounting to $650. It is alleged that the cement was delivered in good order but when it was discharged it was found to be hard, lumpy and badly set as a result of water taken aboard or leakage of the boat so that 468 bags were injured in that way and all of the bags were more or less damaged or torn, 45 being entirely empty.

There is some testimony to show that the bags were roughly handled in loading, which would account in some measure for their bad condition, but there seems to be no way of explaining a hard lumpy or badly set condition except from contact with water.

The bill of lading contains the following, which is pleaded and expressly relied upon by the Boatmen's Company and by the boat:

"The said Company shall not, nor shall any carrier, person, or party, vessel, or her master aforesaid, be liable in any case or event, unless written claim for the loss or damage shall be made to the person or party sought to be made liable, within thirty days, and the action in which said claim shall be sought to be enforced, shall be brought within three months after the said loss or damage occurs."

The testimony does not show that any such claim on the boat as the bill of lading required was made in season. The boat finished loading on the 15th day of July and the bill of lading was then executed. It contained a receipt for 3,000 bags of cement, "3 bags empty." Schenectady was reached the 20th of July, discharging commenced the 21st and finished the 23rd. Many of the bags came out of the boat broken. The loose cement which came out of them was shovelled into other bags excepting 4 or 5, which apparently was called "sweepings" and put into 3 barrels, but no written claim was made for that or any other reason. There is nothing to show that any definite claim was made in writing until the action was commenced on the 2d of September, 1903. Even if there was damage to the cargo, I do not see how recovery can be had for it, in view of the explicit language of the contract above quoted. The St. Hubert, 107 Fed. 727, 46 C. C. A. 603; The Westminster, 127 Fed. 680, 62 C. C. A. 406.

After the foregoing was prepared, but before it was filed or became the opinion of the court, I called the attention of the proctor for the General Supply and Construction Company to the apparent technical defect in its case, whereupon an affidavit was made to the effect that, by an oversight, a letter from him, dated August 18th, 1903, giving notice of the claim against the Harvey, was omitted to be put in evidence, and he asked to have the case re-opened upon

this point. An order to show cause was thereupon granted, which resulted in a stipulation between the parties providing that no other cargo was carried on the boat than that of the General Supply and Construction Company, and that the following letter was received by the Erie Boatmen's Transportation Company on the 19th of August, 1903, viz.:

"New York, August 18th 1903

To Erie Boatmens Transportation Co. L'td
     17 South St. N. Y.

Gentlemen:—

A claim has been placed in my hands for collection against the barge 'D. Harvey' by the General Supply & Construction Co. for damages to cargo. I would be pleased to see you in regard to the same.

Yours respectfully,         (signed) James J. Macklin."

The proctors for the claimant in making the admission and stipulation, expressly objected to the opening of the case for the purpose of introducing the letter and noted an exception in advance to the court's anticipated ruling, allowing the proof to be made.

The evidence should, in my judgment, be received and I grant the motion.

It seems that the notice, in connection with an almost immediate actual knowledge on the boat's and claimant's part of the claimed damage was sufficient to comply with the terms of the bill of lading. The technical objection being thus overcome, I proceed to consider the case upon its merits.

It appears that the cargo was damaged in two ways, viz.: (1) by the breaking of the bags containing the cement and (2) by a portion of it being set by its becoming wet.

1. The cargo was loaded by the boat and it was responsible for the adoption of a proper method. Instead, however, of providing for a careful manner of receiving the cargo, it was loaded from the cars by means of a simple plank, which permitted a drop of several feet into the boat, with the result of a number of the bags being broken. They were in reasonably good order before they were taken by the boat from the cars to load and the boat should respond for the damages in this respect.

2. Three of the bags were receipted for as being "lumpy" but the remainder were in apparent good order. As stated above, there seems to be no way of accounting for the bad condition of the remainder, except by contact with water. There was nothing in the weather during the voyage to explain the wetting and it is probable that there was some defect in the boat, although it was not discernible just prior to the discharge, when greater portions of the loose and other cement seemed to be dry. The fact remains, however, that the cargo was delivered to the boat in good order and delivered by it damaged and in a set condition, which it is testified by a credible expert was the necessary result of wetting.

The set condition was not the subject of consideration until after the delivery of the cargo at Schenectady. The breakage damage was at once noticed and the cargo refused by the consignee upon that ground but it was not until the cargo was piled up after de-

livery, that the set condition of a number of bags was observed and the damage in this respect discovered. Subsequently the full claim now presented was made.

There will be a decree for Erie Boatmen's Transportation Company for $138.50 with interest; also one for The General Supply and Construction Company, with an order of reference for such damages as it may be able to prove. The final disposition of the cases and questions of costs will await the coming in and consideration of the commissioner's report.