### THE PERSIANA (two cases).

(District Court, S. D. New York. November 20, 1907.)

1. SHIPPING—DAMAGE TO CARGO—IMPROPER STOWAGE.

A vessel is liable for damage to wool cargo by whale oil which leaked in large quantities from barrels in an adjoining compartment when the wool was raised but little if any above the deck in stowing, and the facts that whale oil barrels always leaked, and that there was an excessive leakage during the voyage, were known to the navigators, and no steps were taken to discharge the oil from the bilges where it had accumulated to a depth of more than two feet, and from which it was liable to and did escape into the compartment where the wool was stowed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 454.]

**2. Same—Notice of Claim—Vessel Operated by Charterer.**

Where a vessel was being operated by time charterers, and bills of lading were issued by the master under the terms of the charter, the charterers became agents of the owners for the purpose of receiving notice of a claim for damage to cargo required to be given by a bill of lading.

**3. Same—Time of Notice—Requirement of Bill of Lading.**

Notice of a claim for damage to cargo given by the consignee as soon as the cargo was delivered and the damage was known, and while the vessel was still in port, is sufficient where the damage was already known to the owners of the vessel or their agents, notwithstanding a provision of the bill of lading that the owners should not be liable "for any damage to any goods * * * notice of which is not given before the removal of the goods"; such provision not being binding unless under the circumstances it was reasonable.

In Admiralty. Suit for damage to cargo.

Kneeland & Harison, for libelants.

Convers & Kirlin, for claimant.

HOUGH, District Judge. The injury complained of consists of staining most, if not all, of the lower tier of a consignment of bags of wool with whale oil.

The wool was on one side of a wooden bulkhead, and the whale oil on the other. The oil was well stowed and dunnaged, and no weather was encountered, and no occurrences appear in the testimony explaining satisfactorily the enormous leakage which undoubtedly took place. The weight of evidence is that some shrinkage of the barrels in which the whale oil was contained (and consequent leaking) must be accounted for by the stowage of sugar in the same compartment with the whale oil. The sugar generated heat, raised the temperature of the hold, and tended to dry out the barrels. But it also appears that whale oil always leaks, some leakage was to be expected, and it follows that especial care was necessary to prevent injury to cargo in its neighborhood. From the construction of the vessel, it is, I think, clear that any considerable leakage from this whale oil would naturally tend to get into the subcompartment in which the wool was stowed. There is conflict of evidence as to the height at which the lower tier of wool was raised above the deck. I cannot believe that it was elevated as much as six inches. The testimony to the effect that it was scarcely raised at all above the deck, taken in conjunction with the undoubted damage, leads me to believe that the lower elevation or absence of all elevation is the truth.

But the conclusive fact is that the excessive leakage of oil was known, and the oil permitted to rise to the height of two feet and six inches in the bilges at a time when the vessel was encountering reasonably heavy weather and rolling and pitching a good deal. This is quite enough to account for the condition in which the wool was found, and to render it probable that at one time the entire floor of the wool compartment was covered with oil, perhaps rising to the height of several inches, because those in charge of the vessel did not wish to pump so much valuable oil overboard. In effect the vessel chose to carry oil stowed in her bilges, and that of itself was negligent stowage. Such conduct is not within the protection of the Harter act. The case is far more plainly outside that protection than

was that of the Botany Worsted Mills v. Knott, which caused this court "no little embarrassment." 76 Fed. 583.

The vessel at the time of this damage was under time charter. The injury to the wool was discovered before the goods left the ship, but was not known to libelants until a lighterage delivery had been made. The bill of lading under which the goods were carried provides that the owners shall not be liable "for any damage to any goods * * * notice of which is not given before the removal of the goods." As soon as libelants discovered their injury, they gave notice to the time charterers of the vessel. This was after the goods had been delivered, but within a few days of the steamer's arrival, and long before she left port.

It is contended: (a) That any notice to the charterers was insufficient; and (b) that the notice given (assuming it to be otherwise sufficient) was given too late. The libelants had done all their business with the time charterers and knew them as managers of the line or system of transportation in which the Persiana was then operating. The master issued the bills of lading herein under the terms of the charter party, and it seems to me that for purposes such as this the charterers became the duly authorized agents of the owners, and that notice to them, if otherwise sufficient and seasonable, was valid; and for this conclusion I consider The Niceto (D. C.) 134 Fed. 655, as authority—not that the facts are the same, but that the same reasoning is applicable.

With respect to the time of notice, the claimant's legal position is that notice before removal of the goods is a condition precedent to recovery; but, as was remarked in The Westminster, 127 Fed. 680, 62 C. C. A. 406, to sustain such a bill of lading clause "as a binding condition in any given case, it must appear from the circumstances which there prevail that it was just and reasonable."

Under the circumstances shown in this case, it seems to me clear that every just and reasonable requirement is satisfied by what the libelants did, i. e., they gave notice as soon as they learned of the damage, and of a damage which was already known to the claimants or their agents, and did this while the vessel was still unloading.

Decree for libelants in both cases, with an order of reference if the amount of damages be not agreed upon.