THE PERSIANA.

(Circuit Court of Appeals, Second Circuit. February 14, 1911.)

Nos. 165, 166.

1. SHIPPING (§ 134*)—DAMAGE TO CARGO—LIABILITY OF VESSEL—NEGLIGENCE IN CARING FOR CARGO — "MANAGEMENT OF THE VESSEL" — "FAILURE IN PROPER CARE OF THE CARGO."

The action of the master of a vessel in permitting whale oil, which leaked from barrels, to remain in the bilges, with the object of saving it at the end of the voyage, did not pertain to the "management of the vessel," within section 3 of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]); but injury to other cargo from such oil arose from "failure in proper care of the cargo," within section 1, for which the vessel was liable.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 490, 491; Dec. Dig. § 134.*

For other definitions, see Words and Phrases, vol. 5, pp. 4317–4319; vol. 8, p. 7714.]

2. SHIPPING (§ 142*)—DAMAGE TO CARGO—NOTICE OF CLAIM—REQUIREMENT OF BILL OF LADING—"BEFORE REMOVAL."

A provision in a bill of lading that the shipowner shall not be liable "for any damage to any goods, * * * notice of which is not given before the removal of the goods," construed to mean "before removal" from the ship's custody and control, is lawful and valid; and a shipper under such a bill, seeking to recover for damage to cargo, must show a compliance with its terms.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 496; Dec. Dig. § 142.*

For other definitions, see Words and Phrases, vol. 1, pp. 735–737.]

Coxe, Circuit Judge, dissenting.

Appeals from the District Court of the United States for the Southern District of New York.

Suits in admiralty by Edmund Lissberger and by Frederick T. Busk and others against the steamship Persiana; Furness, Withy & Co., Limited, claimant. Decrees for libelants, and respondent appeals. Reversed.

These causes come here upon appeal from decrees of the District Court, Southern District of New York, holding the steamship Persiana responsible for damage to bales of wool due to contact with whale oil carried in her No. 2 lower hold on a voyage from the River Plate to New York. The opinion of the District Judge will be found in 156 Fed. 1019.

J. Parker Kirlin and John M. Woolsey, for appellants.

Lawrence Kneeland, for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The following excerpts from the opinion of Judge Hough sufficiently set forth the facts:

"The wool was on one side of a wooden bulkhead and the whale oil on the other. The oil was well stowed and dunnaged, and no weather was encountered and no occurrences appear in the testimony explaining satisfac-

torily the enormous leakage which undoubtedly took place. * * * Some leakage was to be expected, and it follows that especial care was necessary to prevent injury to cargo in its neighborhood. From the construction of the vessel it is clear that any considerable leakage from this whale oil would naturally tend to get into the subcompartment in which the wool was stowed. * * * The excessive leakage of oil was known (to the ship's officers) and the oil was permitted to rise to the height of two feet and six inches in the bilges at a time when the vessel was encountering reasonably heavy weather and rolling and pitching a good deal. This is quite enough to account for the condition in which the wool was found, and to render it probable that at one time the entire floor of the wool compartment was covered with oil, perhaps rising to the height of several inches."

The ship had sufficient pumps in good condition to discharge the oil from the bilges and keep it at so low a level as not to expose the wool to damage. But the master intentionally allowed it to accumulate, because if it were pumped overboard it would be lost; but if he could keep it in the bilges till the ship got to New York, it could be pumped out here "for the benefit of the oil people."

The claimant contends that the ship is to be exonerated under the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2916]). The question presented is whether the damage to the wool was "loss or damage arising from negligence, fault or failure in proper loading, stowage, custody, care or proper delivery" of the cargo, within the first section of the Harter act, or was "damage or loss resulting from faults or errors in navigation or in the management of the vessel," within the third section of that act.

The frequency with which pumps are worked during a voyage may fairly be classified as "management of the vessel," but that is not determinative of the question here presented. In The Germanic, 196 U. S. 589, 25 Sup. Ct. 317, 49 L. Ed. 610, the court indicated that the purpose or intent with which some act was done or left undone was an important element to be considered. The court says:

"If the primary purpose is to affect the ballast of the ship, the change is management of the vessel; but if the primary purpose is to get the cargo ashore, the fact that it also affects the trim of the vessel does not make it the less a fault of the class which the first section removes from the operation of the third. The primary object determines the class to which it belongs."

In the case at bar manifestly the oil was allowed to accumulate in the bilges, not for ship's purposes, but because, as Judge Hough aptly expresses it, the master "chose to carry oil stowed in her bilges." Such an act, although it happened during the voyage, is not within the provisions of the third section.

It is further contended by appellant that sufficient notice of claim was not given. The bill of lading provided that the owner should not be liable "for any damage to any goods, notice of which is not given before the removal of the goods." The vessel discharged at a dock in Brooklyn, and many bales of wool consigned to libelants were taken away in good order. The particular lot from this part of hold No. 2, including the damaged bales, was placed on the dock on or before May 28, 1907. Libelants gave a lighterage company an order for it for transportation to the Jersey City Stores. The lighter came to the dock and began to load this wool late in the evening of May

28th, and finished the next day, when the lightermen receipted for the wool "34 oil stained" and carried it to Jersey City. The following day (May 30th) was a holiday, but on May 31st the Jersey City Stores notified libelant Lissberger (who had bought Busk & Jevons' shipment) that a number of bales were oil damaged, and on June 1st, upon receipt of this notification, he gave written notice of claim to the Tweedie Trading Company, the time charterer of the vessel. Busk & Jevons, being informed of the damage by Lissberger, gave similar notice on June 3d, a Monday.

A provision such as this, incorporated in a bill of lading and accepted by the shipper, becomes a part of the contract between the parties; and if recovery is sought upon the contract, the party seeking to recover must show compliance with its terms. The court cannot substitute some other provision, and hold that compliance therewith is sufficient. Moore v. Harris, 45 Law Journal, P. C. 55, a case closely parallel to the one at bar. A fair construction of the words "before removal" would make them refer, not merely to removal from the ship's hold, but to removal from her custody and control. Our courts have held that there are certain stipulations which the public policy of this country will not allow a carrier to make—such, for instance, as would protect him against the consequences of his own negligence. But this stipulation is not of that character. It has been held that bills of lading may properly contain some reasonable requirements that notice of claim be given, so that the shipowners may know, not merely whether there is damage for which no demand may ever be made, but whether any claim for damages is asserted by the consignee, so that the necessary investigation may be made· while the goods are still under the control of the ship. The Westminster, 127 Fed. 680, 62 C. C. A. 406; The St. Hubert, 107 Fed. 727, 46 C. C. A. 603. See, also, The Queen of the Pacific, 180 U. S. 49, 21 Sup. Ct. 278, 45 L. Ed. 419, where a requirement that notice of claim should be made within 30 days after the date of the bill of lading was sustained, and the court cites with approval Goggin v. Kansas Pac. Ry. Co., 12 Kan. 416, which held of a requirement that claims for damage to live stock should be made in writing, before or at the time the stock was unloaded:

"The parties were competent to make the contract, and did make it, and it must be held good, unless it is contrary to public policy."

Since we cannot hold that the clause in this bill of lading is against public policy, we cannot strike it out of the contract merely because the present case is a hard one, nor can we substitute some other clause in its place on any theory that claimant may not have been prejudiced by failure to receive notice of claim while the goods were still under its control. Having failed to comply with this provision, libelants cannot recover.

The decree is reversed, and cause remanded to the District Court, with instructions to dismiss the libel, without costs in either court.

COXE, Circuit Judge (dissenting). We all agree that the libelants were damaged in the sum of $8,927, and that the ship would be liable

for this sum, but for the fact that notice of the claim was not given prior to the removal of the goods. In the opinion of the majority of the court relief must be refused for this reason. There is no pretense that the ship's officers did not know of the *damage* to the goods before the removal. It was occasioned by their flooding the vessel's bilges with whale oil and all the facts and circumstances were within their knowledge. They knew of *the claim* while the ship was still discharging and before anything had occurred to prevent the fullest investigation. Indeed, the depositions of the officers of the vessel were taken before she left this port. A large part of the wool was stowed so high above the bilges that it received no damage at all. This wool was first taken out. The extent of the damage could not be ascertained until all the wool was unloaded. The unloading from the bunker where the damaged goods were stowed was not completed until eleven o'clock on the night of May 28th. The next day the lighter carried the wool to the Jersey City Stores. The day following was Decoration Day—a legal holiday. On May 31st the charterer was notified of the damaged condition of the wool, and on June 1st notice of the claim was given. The testimony shows that within a reasonable time after the extent of the damage was known to the consignees, notice of the claim was given and that had it been given on May 29th instead of June 1st, it could not have changed the situation in the slightest degree. Every right, every advantage, every opportunity was open to the ship and the charterer then as fully as if the notice had been given on May 29th.

The language of the bill of lading is as follows:

"That the master, owners or agents of the vessel shall not be liable * * * for any claim, notice of which is not given before the removal of the goods."

It is not pretended that this language is reasonable or effective if construed to mean that the claim must be made before the removal of the goods from the vessel. So interpreted, it would prevent relief in cases where the goods are inclosed in crates or boxes where their condition could not be ascertained until the coverings were removed. So, too, if the goods were discharged into the consignee's lighters or at night, where it would be impossible to discover the damage. Obviously the language needs interpretation and construction. I do not understand that this proposition is disputed, and it follows that it must be reasonably construed unless it is to be as an absolute shield to cover the grossest negligence. The object of the notice evidently was to give the parties responsible for damages timely notice of any claim that may be made while the facts are all ascertainable. It can have no other purpose except to prevent a fictitious claim or a claim for larger damages than have actually been sustained. To hold in every case that no claim for damages can be made unless notice be given before the removal of the goods would be a highly technical construction and would lead to manifest injustice. It would be a complete defense even where the consignee of the goods did not and could not discover the damage prior to removal. It would be a defense when the shipowner knew of the damage and the consignee did not. Indeed,

if strictly construed, it would prevent a recovery even where the shipowner purposely caused the goods to be removed. Construction being necessary, it seems to me that the words "removal of the goods" mean such a removal from the vessel or the dock as would prevent the shipowner from obtaining the requisite proof as to their condition. In other words, such a removal as might permit an unfair or fraudulent claim to be made.

As was said in the case of The Westminster, 127 Fed. 680, 62 C. C. A. 406, the purpose of the provision is "that the shipowners may know not merely when there is damage—for which no demand may ever be made—but whether any claim for damage is asserted by the consignee so that the necessary investigation can be made to ascertain the facts while they are fresh." See, also, The Niceto (D. C.) 134 Fed. 655.

In The Queen of the Pacific, 180 U. S. 49, 21 Sup. Ct. 278, 45 L. Ed. 419, the libelants permitted four years to elapse before commencing suit, and the court naturally held this delay to be unreasonable, but observed:

"The stipulation itself would be invalid only upon showing that under the circumstances of the particular case enforcement would work a manifest injustice. In this view it is unnecessary to consider whether the limitation of thirty days for the commencement of the suit be reasonable or not."

Enforcement in the case at bar does work a manifest injustice. There is here no definite, clearly defined and easily understood period of limitation, the language is "before the removal of the goods." This language, as I have endeavored to point out, must be interpreted and construed having reference to the character of the goods, the manner in which they are packed, the extent and nature of the damages and all the surrounding facts and circumstances.

I have been unable to find an American authority which defeats an otherwise meritorious claim because the notice of claim was delayed for a day or two in such circumstances as are here described. If notice be given as promptly as the circumstances permit and if the failure to give it "before removal" works no wrong or injustice to the person liable for the injury, such a notice should be held reasonable.

We have, then, an honest claim for nearly $9,000 defeated by what seems to me a harsh and unnecessary construction of a clause intended to prevent dishonest and exorbitant claims. If such a construction be ever permissible it should be to defeat an unfair claim, not a fair and honest one.

I think the decrees should be affirmed.