## ANCHOR LINE (HENDERSON BROS.), Limited, v. JACKSON.

(Circuit Court of Appeals, Second Circuit. November 9, 1925.)

No. 58.

1. **Shipping ⟷142—Notice of claim for damage to shipment held not given before removal of goods, as required by bill of lading.**

Notice of claim for damage to shipment *held* not given before removal of goods, as required by bill of lading, by checking damages and having defendant's delivery clerk note damages on delivery receipts.

2. **Shipping ⟷142—Notice that goods have been damaged in transit is not notice of claim for recoupment.**

Notice that goods have been damaged in transit is not notice of claim for recoupment, within bill of lading requiring notice of claim before removal of goods.

3. **Shipping ⟷142—Recovery for damage to portion of shipment not removed before notice of claim held warranted.**

Under bill of lading requiring notice of claim before removal of goods, shipper *held* entitled to recover to extent of certain damaged slabs, which were not in fact removed before claim was made.

4. **Shipping ⟷132(5)—Evidence held to support verdict of negligence in discharging marble slabs from vessel.**

Evidence *held* to support verdict of negligence in manner of discharging marble slabs from vessel.

5. **Shipping ⟷140—"Invoice value," as used in bill of lading limiting shipowner's liability, defined.**

"Invoice value," within bill of lading limiting shipowner's liability, means amount writ-

ten into invoices, and does not include duties or freight not prepaid, and differs from "invoice price" only in that terms of sale may require discounts from prices to arrive at value.

In Error to the District Court of the United ·States for the Southern District of New York.

Action by Jerome A. Jackson against the Anchor Line (Henderson Bros.), Limited. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

The plaintiff sued as consignee of about 2,300 marble slabs and blocks, shipped under separate bills of lading on three steamers of the defendant from Leghorn to New York in May, June, and July, 1919, part of which were delivered broken and stained. The complaint was not of the stowage of the marble in the 'tween decks, but of the manner of unlading. Four or five slabs were lashed together in a rope sling, and were dragged across the floor by a rope attached to a winch on the steamer's main deck. When under the square of the hatch they were hoisted to the deck and so over the side. The injuries occurred because of chipping and breaking as the slabs were dragged over the uneven surface of the 'tween decks. Just how the stains occurred is not material to the case.

All the bills of lading contained the following clause: "The shipowner is not to be liable * * * for any claim, notice of which is not given before the removal of the goods." Again: "In case of damage, * * * the shipowner is not to be liable for more than the invoice value of the goods."

The plaintiff and his agent attended at the discharge, and protested against the way in which the slabs were being dragged over the 'tween decks, insisting that some more careful method should be adopted. The plaintiff's agent, in the case of one of the ships, and the lighter captain, in the case of the other two, checked the damaged slabs with the defendant's tally clerk, and, when their figures disagreed as to the extent of the damage, came to a compromise figure. Thereupon the plaintiff's agent and the tally clerk went to the defendant's delivery clerk, who noted on the delivery receipts signed by the plaintiff the number of broken or stained slabs. Some of the damaged slabs were left in the hold, on the pier, or on the lighter.

In his charge to the jury the learned District Judge allowed them to find that the protest made by the plaintiff, the tally, and the notation upon the receipts were sufficient notice of a claim for damages before the removal of the slabs to conform with the clause in the bills of lading. He also allowed the jury to include in their verdict, not only the invoice value of the marble as contained in the invoices themselves, but also the freight and duties, which the plaintiff was obliged to pay in order to unlade them.

The defendant raises the objections that no notice of claim as required by the bills of lading was given; that the court erred in allowing freight and duty in addition to the price contained in the invoices; and various other supposed errors not necessary to set forth for the disposition of this writ.

Lord, Day & Lord, of New York City (Franklin Grady, of New York City, of counsel), for plaintiff in error.

Louis Boehm, of New York City (Samuel Zeiger, of New York City, of counsel), for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] In The Persiana, 185 F. 396, 107 C. C. A. 416, we held that a notation of damage upon the ship's receipt signed by the consignee was not enough to satisfy a clause which read that the ship should not be liable "for any damages to any goods, notice of which is not given before the removal of the goods." That was a far stronger case for the consignee than that at bar, because the bill of lading did not require, as here, that a claim should be made, but only notice of the damages themselves. The San Guglielmo, 249 F. 588, 161 C. C. A. 514, was very nearly on all fours. There the bill of lading read that the ship should not be liable "for any claim, however arising, of which notice is not given before removal." We held insufficient under that clause evidence that the consignees had called the captain's and dock superintendent's attention to the fact that the goods were damaged. In The St. Hubert, 107 F. 727, 46 C. C. A. 603 (C. C. A. 3), the drayman had the damage noted on the receipt which he gave, but it was held insufficient under a clause like that at bar. The Westminster, 127 F. 680, 62 C. C. A. 406 (C. C. A. 3), is to be distinguished, in that while the damage was apparent no notice of it was given. Under such circumstances there was, of course, no possibility of spelling out a claim for damages.

[2] The upshot of these cases is that notice that the goods have been damaged is not notice of a claim for recoupment. The result is perhaps a narrow interpretation, and has not been established in this circuit without strong opposition. Its existence is, however, unquestioned, and it seems to us undesirable by nice distinctions to invite perpetual litigation in its application. There can, indeed, be no doubt that it is one thing to advise a ship of the fact that she has discharged damaged goods and another that you mean to hold her for the loss. The two may shade into each other, but they are quite distinct. We may concede that notice of damage ordinarily presupposes that the consignee is contemplating a claim, but it is not equivalent even to an assertion that he will make one in the future; certainly it is not a claim in præsenti. He may conclude that he has no rights against the ship under the bill of lading, or that, if he has, it is not worth his while to press them. A protest is not a claim.

In the case at bar the plaintiff did not do more than protest and reserve his rights. It is true that he did more than in The San Guglielmo or The Persiana in this: That not only did he call the attention of the ship's agents to the damage, and have it noted on the receipts, but he took an agreed tally. But all of this did not go beyond showing that he was preparing for a claim, which he might or might not finally decide to present. It is impossible even to know whether he then intended to make one; but, if it were possible, that would not be enough. The phrase calls for more. A ship is not bound by inference to gather the consignee's purposes; there must be language showing an intention to make the claim. While it need not be written or formal, it must advise the ship unequivocally that she is to be held. We can find nothing in the facts we have recited on which a jury could say that this had been done.

[3-5] Since there must be a new trial, we add the following directions for its conduct: The plaintiff may recover for all marble not removed before the claim for damages of September 18, 1919. Whether the slabs left in the lighter were removed, we do not now decide. The same evidence will support a second verdict of negligence in the discharge. The phrase "invoice value" means the amounts written into the invoices taken as of the time of shipment, and it means nothing more. It differs from "invoice price" only in the fact that the terms of sale may require discounts from the prices to arrive

9 F.(2d)—35

at present value. Arthur v. Goddard, 96 U. S. 145, 24 L. Ed. 814. Duties cannot be included; the clause was general, applying to losses at sea, as well as to damage to goods unladen. It must have a single meaning. It is true that in Pierce v. So. Pac. Ry. Co., 120 Cal. 156, 47 P. 874, 52 P. 302, 40 L. R. A. 350, freight was added, in the case of a similar provision; but we are not advised for what reason. When freight is prepaid, it becomes part of the value; but we think it impossible to regard it as part of the "invoice value," and to allow it seems to us to ignore the language used.

Judgment reversed, and new trial ordered.