**DELAWARE STEEL COMPANY**

v.

**CALMAR STEAMSHIP CORPORATION**
and
**S.S. SEAMAR, her engines, boilers, tackle, apparel, etc.**

**No. 193 of 1964.**

United States District Court
E. D. Pennsylvania.

Aug. 8, 1966.

LaBrum & Doak, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Byrne, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

JOHN W. LORD, Jr., District Judge.

This matter is presently before this Court on the joint motions of respondent and libellant for judgment on the pleadings or, in the alternative, for summary judgment. The facts are not disputed, and both parties have agreed to adjudication of the controversy on the basis of those facts well pleaded. The only issue before this Court, therefore, is the effect of a bill of lading provision requiring that claims for loss or damage be presented in writing to the carrier, the respondent, or his agent, within fifteen (15) days after delivery of the cargo. Paragraph 22 of the bill of lading in

question declares that in the absence of such written notice, any claims " * * * shall be deemed to have been abandoned and no suit shall thereafter be maintainable to recover the same." The libellant concedes that it cannot prove compliance with the above provision, but asserts that its conduct upon learning of the damage to its cargo amounted to substantial compliance, and that therefore the respondent ought not be permitted to avoid its contractual liability on the basis of a mere technicality.

From the pleadings it appears that on December 27, 1963, the libellant's agent delivered to the respondent at Philadelphia, Pennsylvania twelve lifts of rolled steel in good condition for carriage to Long Beach, California. On January 19, 1964, the ship SS SEAMAR arrived at the port of delivery with the above mentioned cargo visibly damaged. The damages are asserted to approximate $5,748.98.

The respondent admits that libellant's representative in Long Beach, California took written exceptions to the condition of the cargo at the time of delivery on the delivery receipt. It admits further that its own surveyor personally examined the damaged cargo. However, it adamantly maintains that no payable claim developed for the reason that the contractual provision requiring written notice *and* claim was not strictly complied with. The required notice of claim in writing was not forwarded to the respondent until twenty-six days after final delivery of the cargo, and some thirty-six days after delivery of the first portion thereof.

The libellant, on the other hand, candidly admits that it had knowledge of the damage at the time of delivery, but that it cannot prove that written notice of claim was forwarded to the respondent within the specified time.

■ This then leads us to an examination of the authorities regarding interpretation and application of notice of claim provisions contained in bills of lading. In Admiralty, as elsewhere in the law, we begin with the general proposition, requiring no citation of authority, that people are free to contract as they see fit, provided that neither the law nor public policy is thereby contravened. Notice provisions in insurance policies and bills of lading alike have uniformly been upheld, provided that they are reasonable in light of the individual circumstances of the case. Such provisions are " * * interpreted as a limitation on the shipper's remedy rather than on his substantive right of recovery." 4 Williston, Contracts § 1112 at 3165–66 (rev. ed. 1936, Supp. 1957). The reasonableness of individual provisions is determined not by evaluating the utility of the clause to the parties, but instead by determining " * * * the cargo owner's ability to comply with it in the circumstances." The J. L. Luckenbach, 65 F.2d 570, 574 (2nd Cir. 1933).

■ Notwithstanding the seemingly gossamer distinction between conditions precedent and subsequent, it is uniformly agreed, both in this Circuit and elsewhere, that such clauses are conditions precedent to the shipper's recovery. The Westminster, 127 F. 680 (3rd Cir. 1904), cert. denied 194 U.S. 637, 24 S.Ct. 860, 48 L.Ed. 1161 (1904); Cudahy Packing Co. v. Munson S.S. Line, 22 F.2d 898, 900 (2nd Cir. 1927); see cases collected at § 1112, n. 2a, 4 Williston, Contracts, supra. It now remains to be ascertained whether the libellant satisfied the condition.

■ The notice provision in the bill of lading in question is clear and unequivocal. It required at least two things of the libellant. First, it was required to notify the respondent of the existence of the DAMAGE; second, it was obligated to present a CLAIM for the damage. Both of these items had to be furnished in writing within the prescribed period of fifteen days. This Court's examination of the facts indicates that the condition was not satisfied.

■ When the shipment was delivered at Long Beach, California, it was clear to all parties that the cargo was in a dam-

aged condition. It is true that the libellant orally advised the respondent's surveyor that a claim would be made for the damage, and that libellant's agent took exception to the damage on the delivery slip. However, a review of the authorities pertinent to the issue leaves little doubt as to whether this constituted satisfaction of the clause. For even if it be conceded that the written notation of damage on the delivery receipt constituted sufficient notice of damage, it could not be construed to be notice of a claim. In this area of the law involving bills of lading, these two items are conclusively deemed to be separate and distinct. The distinction is pointed up in The St. Hubert, 107 F. 727 (3rd Cir. 1901), cert. denied 181 U.S. 621, 21 S.Ct. 925, 45 L.Ed. 1032 (1901). Speaking through Judge Gray, the court there observed:

"The ship or its owner desires to know, not merely whether there is damage, for which no demand may ever be made, but whether there is any claim * * *, so that the necessary investigation can be made to ascertain the facts while they are fresh." (107 F. at 730). To the same effect see also The Westminster, supra.

Thus merely advising the shipowner of the existence of damage does not operate to notify him that a claim will be made. In Anchor Line v. Jackson, 9 F.2d 543 (2nd Cir. 1925), Judge Hand commented on the issue as follows:

"The upshot of these cases is that notice that the goods have been damaged is not notice of a claim for recoupment. The result is perhaps a narrow interpretation, and has not been established in this circuit without strong opposition. Its existence is, however, unquestioned, and it seems to us undesirable by nice distinctions to invite perpetual litigation in its application. * * * it is one thing to advise a ship of the fact that she has discharged damaged goods and another that you mean to hold her for the loss. * * * We may concede that notice of damage ordinarily presupposes that the consignee is contemplating a claim, but it

is not equivalent even to an assertion that he will make one in the future * * *. A protest is not a claim." (at 545).

■■ Moreover, the fact that the respondent conducted its own survey of the damage is of no help to the libellant. The shipowner's right to demand strict compliance with the terms of the bill of lading, notwithstanding his knowledge of the loss, is too well established to be needful of much discussion. See e. g. The West Arrow, 80 F.2d 853 (2nd Cir. 1936); T. M. Duche & Sons v. Lloyd Mediteraneo, 31 F.2d 496 (E.D.N.Y. 1928), aff'd 31 F.2d 1010 (2nd Cir. 1929); Anchor Line v. Jackson, supra; The San Guglielmo, 249 F. 588 (2nd Cir. 1918); The Persiana, 185 F. 396 (2nd Cir. 1911); The St. Hubert, supra; The Westminster, supra. In view of these authorities the fact that the respondent had knowledge of the damage is irrelevant. This is no even though such knowledge was obtained through its own survey. See Bombace v. American Bauxite Co., 39 F.2d 867 (5th Cir. 1930). For it may well be, as respondent asserts, that notice of libellant's claim would have impelled it to perform a more careful investigation than was actually had, "even to the extent of locating and deposing witnesses while the vessel was on the West Coast or near the port of discharge." (pp. 9–10 Respondent's brief).

It is clear that the libellant did not satisfy the time requirements contained in the bill of lading. Specifically, that its notice of claim was not forwarded to the respondent until some twenty-six days after final delivery. This exceeded the contract by some eleven days as to that shipment, and by twenty-one days as to the initial shipment. The libellant does not contest these facts. Nor does it assert any reliance on the conduct of the respondent, such as might excuse it from strict compliance with the notice provision. Cf. Bombace v. American Bauxite Co., supra. It merely argues that a technical defense such as a limitation clause ought not to be permitted to work a forfeiture of libellant's rights.

This position is untenable and decidedly against the weight of authority, especially where, as here, no waiver or estoppel by way of reliance is claimed.

The Georgian, 76 F.2d 550 (5th Cir. 1935), cited by the libellant in support of its argument respecting the technicality of the defense does not parallel the facts presently before this Court. True, the court there stated that it would not allow such a clause to defeat a recovery if it would be inequitable to do so. However, in that case the clause of limitation concerned only the notice of damage. Under the bill of lading there it was not necessary to submit a claim for loss for six months, and the court states that this was done. Moreover, the notice of damage was given to the ship's mate, who then recorded it in the ship's log with some degree of specificity. Under those circumstances it would indeed have been inequitable to have found that no notice of damage had been given. Those facts do not obtain here.

 To avoid the limitation the shipper must show that it was either unreasonable under the circumstances, or that the shipowner has waived it or is estopped from asserting it. See cases collected in 4 Williston, Contracts, supra. The libellant does not contend that the provision was unreasonable. It would be difficult for him to do so in view of the fact that, as stated in The J. L. Luckenbach, supra, reasonableness of a notice clause is determined by reference to the shipper's ability to comply, rather than by evaluating its utility to the parties. There can be no question here about the libellant's ability to comply with the provision. It merely failed to do so.

The Third Circuit recognized, inferentially, the continuing vitality of such clauses as recently as 1932 in The Bellingham, 57 F.2d 1015, 1016, 1018, where it observed:

"Nor was there any compliance with the notice clause, which denies liability for any claim unless written notice shall be given to the carrier with statement of particulars, before the removal of the goods or a portion thereof, delivered within ten days of the final discharge of the vessel. These clauses have been before the Supreme Court in numerous cases, and their validity repeatedly affirmed."

This Court is fully cognizant of the apparent harshness of its ruling. However, the provision in question is clear and unequivocal, and the libellant has given us no reason to refuse its strict enforcement. Accordingly, judgment will be entered in favor of the respondent and against the libellant, there being no genuine issue as to any material fact.

And now, to wit, this 8th day of August, A.D. 1966, it is ordered that the motion of the respondent, Calmar Steamship Corporation and the SS SEAMAR, for summary judgment pursuant to Admiralty Rule 58, be and the same is hereby granted; the motion of libellant, Delaware Steel Company, for summary judgment is denied.

And it is so ordered.