**DELAWARE STEEL COMPANY,** Appellant,

v.

**CALMAR STEAMSHIP CORPORATION** and

**SS SEAMAR, Her Engines, Boilers, Tackle, Apparel, etc.**

No. 16185.

United States Court of Appeals Third Circuit.

Argued Feb. 9, 1967.

Decided May 8, 1967.

Joseph G. Manta, Philadelphia, Pa. (Ronald C. Scott, LaBrum & Doak, Philadelphia, Pa., on the brief), for appellant.

James F. Young, Philadelphia, Pa. (Krusen, Evans & Byrne, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, HASTIE and FORMAN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

The libellant, Delaware Steel Co., shipped a quantity of steel from Philadelphia to Long Beach, California, via the respondent's steamship Seamar. Claiming that this shipment had been damaged in transit, Delaware instituted this libel against the ocean carrier. The defense was failure of the libellant to comply with clause 22 of the bill of lading, which reads in part as follows:

> "22. Written notice of claim for loss of damage must be given to this carrier or its agent at the port of discharge, or to the delivering carrier or its agent at the port of ultimate destination, before removal of the goods, except in case of concealed loss or damage, in which case written notice of claim must be so given within 10 days after removal of the goods. All claims for loss or damage or delay in delivery must be presented in writing to the carrier liable therefor or his agent at the port of discharge or at the port of ultimate destination within 15 days after delivery of the cargo, and unless such claim is presented as above provided, it shall be deemed to have been abandoned and no suit shall thereafter be maintainable to recover the same. * * * "

Because it appeared and was conceded that the libellant had not complied literally with these requirements, the trial court granted a motion by the respondent carrier for summary judgment. The libellant has appealed claiming that the record discloses such substantial compliance with the requirements of notice and claim that this suit should not be barred under clause 22.

More particularly, the respondent has asserted and the libellant has admitted that "libellant through its agents, Carey Trucking Co., took delivery of the entire cargo of 12 lifts of rolled steel on or before January 30, 1964". The respondent admits that "Carey Trucking Company, its agents or employees, made written exceptions to the condition of libellant's cargo on the respondents' delivery record * * * with respect to ten bundles on January 21, 1964 and with respect to the remaining two bundles on January 30, 1964". The respondent also admits that its surveyor examined libellant's cargo "prior to the end of January, 1964"; that it "was aware of damage to Libellant's cargo at or before the time of its discharge from SS Seamar", and that "Libellant's cargo surveyor advised Respondent's cargo surveyor within ten (10) days after unloading of the damaged cargo from SS Seamar of the damage and invited participation by Respondent's surveyor in a survey of the damage". In addition, answering the respondent's motion for summary judgment, the libellant has averred that "within ten days after the unloading of libellant's cargo, libellant's surveyor orally advised respondent that a claim for the damage would be made". However, in the same pleading the libellant admitted "that libellant will be unable to prove a writing sent within fifteen days of delivery of the cargo making claim for the damage". Finally, the parties agree that written claim was submitted on February 26, 1964, 26 days after completion of the delivery of the damaged cargo.

Thus, chronologically, we have (1) the carrier's knowledge of cargo damage at or before the time of delivery, (2) the shipper's written exceptions to the con-

dition of the cargo at the time of delivery, (3) the libellant's oral notice of claim [1] and invitation to the carrier to participate in a survey during the course of and within ten days after the beginning of delivery, (4) actual examination of the damaged cargo by the carrier's surveyor, and (5) written notice of claim twenty-six days after delivery was completed.

Early decisions of this court strictly enforced the then familiar and approved provisions of bills of lading that the shipper or consignee must give notice—not necessarily in writing—of his damage claim before removing his goods from the dock. The St. Hubert, 3d Cir., 1901, 107 F. 727, cert. denied 181 U.S. 621, 21 S.Ct. 925, 45 L.Ed. 1032; The Westminster, 3d Cir., 1904, 127 F. 680, cert. denied 194 U.S. 637, 24 S.Ct. 860, 48 L.Ed. 1161. Accord, Anchor Line v. Jackson, 2d Cir., 1925, 9 F.2d 543; The San Guglielmo, 2d Cir., 1918, 249 F. 588. The rationale of these decisions was that the carrier could reasonably insist upon being informed "not merely whether there is damage, for which no demand may ever be made, but whether there is any claim for damages made by the consignee, so that the necessary investigation can be made to ascertain the facts while they are fresh". The St. Hubert, supra, 107 F. at 730.[2] However, since these cases involved no agreement that notice be in writing, no question arose whether a requirement of a writing should in all circumstances be strictly enforced.

On the other hand, related requirements in bills of lading have not been enforced where their enforcement would be pointless formalism. In the West Arrow, 2d Cir., 1936, 80 F.2d 853, the bill of lading required that notice of claim be followed within 30 days by a particularized claim. Actually, surveyors for both parties had surveyed the damage within the 30 day period. The absence of a particularized claim within the time limited by the bill of lading was not permitted to bar recovery. We have a similar situation here.

In The Georgian, 5th Cir., 1935, 76 F.2d 550, the bill of lading required notice in writing of damage within 30 days after the removal of the goods. Upon discharge of the cargo, a surveyor discovered and pointed out certain damage. Thereupon, one of the ship's officers noted in the ship's log the fact and nature of the damage. This was held to constitute sufficient compliance with the notice requirement, though no one acting for the consignee had given written notice. The court stated that "[t]he purpose of the clause is to allow opportunity to the vessel to investigate the claim for damage while witnesses are available, and before it is otherwise too late", and then observed that it was "not aware of any case in which such a clause has been upheld as a purely technical defense to defeat recovery if it would be inequitable". 76 F.2d at 551.

In the present case, the written notice of damage, the oral notice of claim and

---

1. Although respondent states in its brief that "it cannot be shown, that a surveyor stands in the stead of the 'carrier' for the purpose of receiving claims or notice of claims", it was conceded at oral argument that timely written notice to the surveyor would have satisfied the bill of lading provision. See The J. L. Luckenbach, 2d Cir., 1933, 65 F.2d 570.

2. It merits mention that in the Second Circuit this rule evoked a strong dissent by Judge Hough one of the most knowledgeable and respected of admiralty judges. In *The San Guglielmo*, he said: " * * * the majority hold in substance

that a shipper's right to recover for obviously damaged cargo depends on whether a carter or driver is able nicely to distinguish between notice of fact of damage, and notice of claim for damage. If he takes away the goods without using the correct legal formula, his employer's rights are gone."

"From this doctrine and the decision applying it I dissent, believing that the only justification for the attempted limitation of carrier's liability is that the carrier is reasonably entitled to knowledge of demands that may be made; more than that is unreasonable." 249 F. at 591.

the suggestion that a survey be made, all given at or a few days after delivery, moved the carrier to very prompt inspection and survey of the damaged goods. The facilitation of such prompt investigation is the purpose normally served by the early submission of written notice and claim. Since the carrier here had been effectively alerted and had made its investigation in anticipation of a written claim, the tardiness of the subsequent written claim was a matter of no practical consequence.

We conclude, therefore, that it would serve no legitimate interest of the carrier and would plainly be inequitable to bar this action for failure to file timely written notice or claim. This case turns on its special facts and should not be read as a judicial invitation to shippers and consignees to disregard procedures specified in bills of lading.

The judgment will be reversed and the cause remanded for further proceedings consistent with this opinion.