## THE TURRETT CROWN.

### VULCANITE ROOFING CO., Inc., v. COMMONWEALTH S. S. CO., Limited.

(District Court, E. D. Virginia. October 21, 1921.)

1. **Carriers ☞160—May require liability to be asserted and claim to be instituted within particular time.**

A common carrier may limit or qualify his common-law liability by special contract as to the time within which the liability may be asserted and suit instituted, provided the limitation or qualification agreed on is just and reasonable, and does not exempt the carrier from losses or responsbilities arising from its own negligence.

2. **Shipping ☞142—Stipulation in bill of lading as to written notice of claim and commencement of suit within particular time held valid.**

Stipulation in bill of lading, requiring written notice of claim to carrier before removal of goods from wharf, and commencement of suit to recover for loss or damage within 3 months after giving such notice, *held* valid.

3. **Shipping ☞142—Shipowner's opportunity to ascertain damage to cargo while repairing ship did not relieve shipper of obligation to give written notice of claim for damage sustained on subsequent voyage.**

Where cargo was unloaded and ship repaired before completion of voyage, the fact that steamship owner had opportunity to ascertain extent of damage to cargo after cargo had been unloaded, pending the repair of the ship, did not relieve shipper from obligation of giving owner notice of claim of loss, ascertained on completion of voyage, after goods had been reloaded, a condition precedent to the commencement of suit to recover damage, where shipper had commenced suit for damage theretofore sustained while ship was being repaired.

4. **Shipping ☞142—Shipper's commencement of suit for damages during voyage held not to entitle him to bring other suit after completion of voyage, without notice of claim.**

Where cargo was unloaded and ship repaired before completion of voyage, the commencement of suit to recover damages to cargo at the

---

time when such repairs were being made did not entitle shipper to bring suit after completion of voyage for damage sustained during voyage, without giving shipowner notice of claim for such damage required by bill of lading, on theory that commencement of former suit dispensed with necessity of such notice, where the second suit was not instituted within 90 days after first suit, under provision of bill of lading requiring commencement of suit within 90 days after notice of claim.

In Admiralty. Libel in personam by the Vulcanite Roofing Company, Inc., against the Commonwealth Steamship Company, Limited, owner of the steamship Turrett Crown. Judgment of dismissal.

Harrington, Bigham & Englar, of New York, and Hughes, Little & Seawell, of Norfolk, Va., for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, and Baird, White & Lanning, of Norfolk, Va., for respondent.

WADDILL, Circuit Judge. This is a libel in personam to recover the sum of $275,000 for alleged failure to deliver, and damage to, a cargo of roofing material, etc., under the following circumstances:

On or about the 15th day of February, 1918, the Patent Vulcanite Roofing Company, Inc., assignor under whom the libelant claims, entered into a contract of affreightment with the respondent to transport on the Turrett Crown a cargo of roofing material, nails, bitumen, steel, and roof machinery, from New York to Genoa, Italy. The vessel completed loading libelant's cargo at New York, consigned "to the order of Direzione del Genio Militare di Milano, Milan, Italy," issued bills of lading therefor to the shipper, and sailed for Genoa on the 25th of February, 1918. She encountered a heavy storm at sea, which resulted in damage to the ship and cargo, and necessitated her putting into Boston, and thence New York, where she arrived in March, 1918. While in New York, it became necessary, by reason of the ship's condition, to discharge the cargo. After the repairs were completed, in the month of July, 1918, the cargo was reloaded, with the exception of 3,515 rolls of roofing paper, which had been so damaged as to be unfit for shipment. The vessel arrived at Genoa on the 3d of August, 1918, where she discharged her cargo, a portion of which was delivered short, and the remainder badly damaged by contact with sea water and fuel oil, negligent handling, and improper stowage, as claimed by the libelant.

While the ship was in New York being repaired, the Patent Vulcanite Roofing Company, Inc., on or about the 3d of May, 1918, filed its libel in rem in the District Court for the Southern District of New York against the Turrett Crown, alleging damages to the cargo covered by the bills of lading to the extent of $125,000. In this suit the respondent appeared as claimant of the ship, and upon filing a stipulation of value of $100,000 the vessel was released. The respondent duly answered this libel, and that suit is now pending in said court. On the 20th of May, 1920, the libel in personam in this case was duly filed against the respondent steamship company, asserting a claim of $275,-000, and averred that the actual damage sustained by the cargo was $375,000. In this action, a foreign attachment was sued out, and levied upon the Turrett Crown and other assets and credits found within the

jurisdiction of this court. Respondent filed its answer, denying liability, and especially set up the legal defense that under paragraph 1 of the bill of lading under which the cargo was shipped, which is as follows:

"* * * The carrier shall not be liable for any claim whatsoever unless written notice thereof shall be given to the carrier before removal of the goods from the wharf. No suit to recover for loss or damage shall in any event be maintainable against the carrier unless instituted within three months after giving of written notice as above provided. No agent or employee shall have authority to waive any of the requirements of this clause."

—libelant's action could not be maintained, as well for failure to give the notice required thereby as to institute suit within the three months period specified. To this defense libelant specially replied, averring that its suit was but a supplemental proceeding to the original libel instituted in the Southern District of New York in May, 1918, with a view of recovering extended damages, ascertained subsequent to the institution of that suit, and that the requirement of written notice should not avail the respondent, since it always had full knowledge of the damage done to the cargo. The validity of the clause in question and its applicability being thus put in issue by the pleadings, the case is now before the court on motion of the respondent to dismiss.

Two questions are presented for the court's consideration: First, the validity of the restrictive clause limiting the time for the institution of the suit; second, whether the libelant or its assignor was relieved from giving written notice of claim as required by the bill of lading, and the effect, if any, the institution of the suit in the Southern District of New York had thereon.

[1, 2] 1. The validity of the clause in question agreed upon between the parties, prescribing the time within which suit should be instituted for breach of the contract, has been so long and definitely settled as not now to admit of serious controversy. The right of a common carrier to limit or qualify its common-law liability by special contract, as respects the time within which the same may be asserted and suit instituted, is manifest, provided the limitation or qualification agreed upon be just and reasonable, and does not exempt such carrier from losses or responsibilities arising from its own negligence. No inherent objection can be validly maintained against this limitation of time, since it is but a continuation of the policy of the statute of limitations intended to effect prompt settlement of controversies, and thus prevent innumerable injustices likely to arise from delay. As was aptly said by Mr. Justice Strong in Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556, the leading case on the subject, as applicable to contracts of affreightment:

"It contravenes no public policy. It excuses no negligence. It is perfectly consistent with holding the carrier to the fullest measure of good faith, of diligence, and of capacity, which the strictest rules of the common law ever required."

Authorities to sustain this are Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556, supra; Hart v. Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; Phœnix Insurance Co. v. Erie & W. Transporta-

tion Co., 117 U. S. 312, 6 Sup. Ct. 750, 29 L. Ed. 873; Primrose v. Telegraph Co., 154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed. 883; Ginn v. Ogdensburg Transportation Co., 85 Fed. 985, 29 C. C. A. 521; Ingram v. Weir (C. C.) 166 Fed. 328; The Persiana, 185 Fed. 396–398, 107 C. C. A. 416. The cases of Riddlesbarger v. Hartford Insurance Co., 7 Wall. 386, 19 L. Ed. 257, and Missouri, Kansas & Texas R. Co. v. Harriman, 227 U. S. 669, 672, 33 Sup. Ct. 397, 57 L. Ed. 690, will be found to be of especial interest. The first case, a decision by Mr. Justice Field, involved restrictive provisions like those here, as applicable to insurance policies; and the second, an opinion by Mr. Justice Lurton, related to liability imposed upon interstate carriers for loss or damage under the Carmack Amendment, Hepburn Act June 29, 1906 (Comp. St. §§ 8604a, 8604aa).

[3] 2. Was the libelant, or its assignor, relieved from the obligation to give the required notice of its claim of loss, as a condition precedent to maintaining its suit, and was there anything in the circumstances that excused or exonerated it from complying with the requirement to give the notice? Two suggested reasons are given for the failure: (a) That under the circumstances of this case no notice was necessary or required, as the respondent had full notice and opportunity of notice of the libelant's damage by reason of the location of the damaged cargo pending the ship's repairs; and (b) that the suit in rem in the court of New York, involving the question of damages to the cargo, was of itself sufficient notice. Neither of these positions, in the court's view, are well taken. The respondent's opportunity of knowledge of the damage to the cargo during the ship's repair in New York was in any event limited to the damage then sustained, and the suit instituted to recover $125,000 on that account would, at least, be supposed to be in full of such damages, and of the libelant's claim. That suit was instituted in May, 1918. Subsequently, in July, 1918, the cargo was reloaded at New York, and then transported to Genoa, where delivery was made to the consignee in the month of August following. Full opportunity was thus afforded to inspect the cargo and observe its condition, and failure to do so cannot be excused, especially if it was the purpose to institute another suit for additional damages to the one already brought and pending in New York. Manifestly, the libelant's claim that it did not ascertain the full extent to which it had been damaged until shortly before the institution of this suit, some two years after delivery and acceptance by it of the cargo, would not constitute a valid excuse for failure to give the notice required in order to maintain the suit.

[4] Does the suit in New York afford notice of the claim in the suit here, instituted more than two years after that suit? To ask this question is to answer it. Whatever rights of amendment the libelant may have in that case, if any, need not be considered here, as plainly, if that suit constituted the notice required, this suit should have been brought within 90 days from that time, and not more than 2 years thereafter. Moreover, that suit, so far from being notice of this suit, should have the very contrary effect, as the respondent had the right to

suppose that the suit as brought covered the libelant's damage, and, without the notice, this suit cannot be maintained.

To what extent this case can be considered as supplemental to the New York suit, or that suit can be relied on as a basis to support this, has frequently been the subject of consideration, at least indirectly. The effect state legislation authorizing new suits within a specified time after the abandonment of the old suit has upon special clauses like the one under consideration has been often considered, with the result, certainly so far as federal decisions are concerned, that almost invariably the agreement of the parties has been held to control, even in the face of the statute. In Riddlesbarger v. Hartford Insurance Co. 7 Wall. 386, at page 391, 19 L. Ed. 257, supra, Mr. Justice Field, speaking for the Supreme Court, said:

"The statute of Missouri, which allows a party who 'suffers a nonsuit' in an action to bring a new action for the same cause within one year afterwards, does not effect the rights of the parties in this case. In the first place, the statute only applies to cases of involuntary nonsuit, not to cases where the plaintiff of his own motion dismisses the action. It was only intended to cover cases of accidental miscarriage, as from defect in the proofs, or in the parties or pleadings, and like particulars. In the second place, the rights of the parties flow from the contract. That relieves them from the general limitations of the statute, and as a consequence from its exceptions also. The action mentioned, which must be commenced within the 12 months, is the one which is prosecuted to judgment. The failure of a previous action from any cause cannot alter the case. The contract declares that an action shall not be sustained, unless such action, not some previous action, shall be commenced within the period designated. It makes no provision for any exception in the event of the failure of an action commenced, and the court cannot insert one without changing the contract."

Following this decision are O'Laughlin v. Insurance Co. (C. C.) 11 Fed. 280; Harrison v. Hartford Fire Insurance Co. (C. C.) 67 Fed. 298; The Persiana, 185 Fed. 396–398, 107 C. C. A. 416, supra; Arthur v. Homestead Ins. Co., 78 N. Y. 462, 34 Am. Rep. 550; Guthrie v. Connecticut Indem. Ass'n, 101 Tenn. 649, 49 S. W. 829; Melson v. Phenix Ins. Co., 97 Ga. 722, 25 S. E. 189.

The court's conclusion upon the whole case is that the respondent's motion to dismiss should be granted, and an order to that effect will be entered on presentation.