## K. IKUNO v. MORRIS & CO.

Circuit Court of Appeals, Fourth Circuit.
October 18, 1927.

No. 2632.

1. Shipping ⌐142—Provision of bill of lading requiring notice of loss, and suit within 3 months thereafter, is valid, when it may reasonably be applied.

A provision in a bill of lading requiring notice of loss before removal of goods from the wharf, and institution of suit within 3 months after notice, is ordinarily valid and enforceable, but will not be applied, unless it is reasonable to do so, which depends on the circumstances of the particular case.

2. Shipping ⌐142—Suit for damage to cargo, filed 14 months after delivery in European ports held barred by limitation in bills of lading.

Suit for damage to cargo, not commenced until 14 months after delivery in European ports, held barred by provision in bills of lading requiring suit within 3 months, where shipper had agents in ports of delivery and the ship was

in a United States port for 7 days within the 3 months.

Cross-Appeals from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Suit in admiralty by Morris & Co., a corporation, against the steamship Naples Maru; K. Ikuno master and claimant. From the decree, both parties appeal. Reversed.

George C. Sprague, of New York City (Hunt, Hill & Betts, of New York City, Hughes, Vandeventer & Eggleston and Braden Vandeventer, all of Norfolk, Va., and E. F. Rapallo, of New York City, on the brief), for appellant and cross-appellee.

George M. Lanning, of Norfolk, Va. (Baird, White & Lanning, of Norfolk, Va., and Barry, Wainwright, Thacher & Symmers and Earle Farwell, all of New York City, on the brief), for appellee and cross-appellant.

Before PARKER and NORTHCOTT, Circuit Judges, and SOPER, District Judge.

SOPER, District Judge. Morris & Co., a corporation of the state of Maine, having its principal office and place of business at Chicago, filed a libel in rem in the United States District Court at Norfolk, Va., against the Japanese steamship Naples Maru on April 28, 1921, for damage to cargo shipped by the corporation upon the vessel from Baltimore to Antwerp and Bordeaux. Substantial shortages in delivery and substantial damages to goods delivered were alleged and proved. The ship was owned by a Japanese corporation, chartered to Cragin & Co., and subchartered to the Diamond Fuel Company, for whom the Acme Operating Corporation furnished the cargo. Some of the libelant's merchandise originated inland, and was transported on through railroad bills of lading. The remainder originated at Baltimore, and was covered by bills of lading of the Acme Operating Corporation. The latter, which by reference were incorporated in the railroad bills of lading, contained the following clause:

"Clause 1. * * * The carrier shall not be liable for any claim whatsoever unless written notice thereof shall be given to the carrier before removal of the goods from the wharf. No suit to recover for loss or damage shall in any event be maintainable against the carrier unless instituted within three months after giving of written notice as above provided. No agent or employee shall have authority to waive any of the requirements of this clause."

The ship arrived at Antwerp on December 21, 1919, where she discharged the cargo consigned to that port, including merchandise of the libelant. Notice of short delivery was given to Eiffe & Co., agents of the Acme Operating Corporation, on January 12, 1920, before the goods were removed from the wharf. No notice of claim was ever given to the master or the owner of ship. After leaving Antwerp, the ship touched at Havre for the discharge of cargo, and then proceeded to Bordeaux where she arrived February 3, 1920. Considerable breakage of cases containing the libelant's goods, and damage to the goods themselves, as well as shortage of goods, were then discovered.

The next day one Dufeu, a bailiff of the Tribunal of Commerce of Bordeaux, at the request of the libelant, went on board the steamship, ascertained the condition of the cargo, and made a report thereof. He delivered one copy to an officer of the ship, whose name he was unable to state, and another copy to Mouart & Co., agents for the Acme Operating Company at Bordeaux. On February 5, 1920, Dufeu summoned the captain of the ship and Mouart & Co. to appear the next day before the Tribunal of Commerce in connection with the damage and shortage found in the cargo. The summons was not delivered to the captain of the ship, but to an officer thereof, with instructions to deliver it to the captain. It will be noted that suit was not entered in the United States until April 28, 1921. Owing to the absence of the ship from this country, the libelant could have brought an earlier action in rem against her in our courts only during the week of March 17 to March 24, 1920, when she was at Philadelphia.

The District Court held that the ship was not liable for the loss of cargo at Antwerp, because notice of the claim was given to the agent of the subcharterer, and not to the ship. The ship was, however, held liable for the damages and short deliveries which occurred at Bordeaux. The court decided that the service of notice upon an officer of the ship was sufficient, and that the provision of the bill of lading, requiring suit to be brought within three months after notice, was unreasonable, and should be disregarded in this case, since the ship was in an American port for only seven days during that period. The parties have filed cross-appeals.

[1] It is not necessary to pass upon the sufficiency of the notices at Antwerp and Bordeaux. It may be assumed, for the purpose of this decision, that they complied with the terms of the bill of lading. The suit must

nevertheless fail since it was not brought within the required period. It is settled beyond controversy, by decisions in this circuit and elsewhere, that a stipulation in a bill of lading requiring notice of loss before removal of goods from the wharf and the institution of suit within three months after notice is ordinarily valid and enforceable. The Turrett Crown (D. C.) 275 F. 961, Id. (C. C. A.) 284 F. 439; The Susquehanna (C. C. A.) 296 F. 461; Queen of the Pacific, 180 U. S. 49, 21 S. Ct. 278, 45 L. Ed. 419; Baltimore S. S. Co. v. Koppel, etc., Co. (C. C. A.) 299 F. 158, 160; Armour, etc., Co. v. Gjeruldsen (Hesperos) (C. C. A.) 15 F.(2d) 553, 554. It is also quite clear from the decisions that the clause in question should not be applied in any case, unless it is reasonable to do so. Events subsequent to the issuance of the bill of lading may be considered, and amongst others, the accessibility of the ship to the process of the courts. Thus it is said in The Queen of the Pacific, 180 U. S. 49, 53 (21 S. Ct. 279) that "the reasonableness of the requirement is one largely dependent upon the object of the notice and the length of the voyage. Thus, a notice which would be perfectly reasonable as applied to steamers making daily trips, might be wholly unreasonable as applied to vessels engaged in a foreign trade. * * * Notice might also be deemed reasonable, or otherwise, according to the facts of the particular case. Thus, if the Queen had been driven out to sea and was not heard from for thirty days, obviously the provision would not apply, since its enforcement might wholly destroy the right of recovery. The question is whether under the circumstances of the particular case the requirement be a reasonable one or not."

[2] After careful consideration of the facts, we do not think it unreasonable to give effect to the terms of the bill of lading in the case at bar. The evidence shows that the shipper was represented by agents, not only in this country, but also at Antwerp and Bordeaux; that a legal proceeding was actually instituted by the libelant against the ship in a court of justice in France; and that subsequently the ship for the period of a week was at the port of Philadelphia in the United States. There is no evidence in the record that the shipper was not well advised at all times as to the location of the ship, or that it was impossible or inconvenient to bring an earlier suit. We do not hold that the absence of a ship from the ports of this country is not a circumstance to be considered in determining the reasonableness of such a clause as that in question, but only that it is reasonable to apply it under the circumstances of the case at bar.

The libel should have been dismissed, and the decree of the District Court must therefore be reversed.