## FIORITA & AMOROSO v. CUNARD S. S. CO.

## LEMON IMPORTING CO., Inc., v. SAME.

(District Court, S. D. New York. July 7, 1924.)

1. Shipping ⬅143—Alleged agency of steamship company for undisclosed principal held not to relieve it from liability for negligent stowage.

Permitting steamship company to escape liability for negligent stowage of lemons, on ground that it acted only as agent for an undisclosed principal, *held* unwarranted; bills of lading on forms of that company having been used, without any disclosure of the agency, or any proof of it at trial.

2. Shipping ⬅138, 141(2)—Liability for improper stowage held not relieved by statute or bill of lading.

Exception in bill of lading of "breakage, * * * insufficiency in strength of wrappers and packages, * * * whether * * * injury * * * therefrom be occasioned by * * * negligence * * * of * * * persons * * * in the service of the company," was void under Harter Act, §§ 1, 2 (Comp. St, §§ 8029, 8030), and, if not, was not available to carrier, which by bad stowage of lemons in boxes, without planking to distribute weight, contributed to the damage.

3. Shipping ⬅141(2)—Bill of lading provision held not to relieve from liability for damages contributed to by bad stowage.

Clause stamped on bill of lading of boxes of lemons, to the effect that, "owing to packages being exceedingly frail, shippers agree that no claim shall be made against shipowners for shortage of packages or cost of cooperage," *held* applicable to claims wholly due to insufficiency of the package, and not to claims for damage to which carrier had contributed by bad stowage.

4. Shipping ⬅142—Written notice unnecessary, under requirement of notice of claim before removal of goods; but notice must be of intention to claim payment of damage.

Bill of lading provision that carrier is not liable for claims, unless notice thereof is given before removal of goods, does not require written notice, but does require that notice be not merely of damage, but of intention to claim payment of damage.

5. Shipping ⬅142—Provision for notice of claim before removal of goods held sufficiently complied with.

Notice to person in charge of one of steamship freight departments and to dock superintendent that he did and would claim to recover for damages to shipment, given after auction sale of part of shipment of lemons, *held* sufficient compliance with bill of lading, requiring notice of claims before removal of goods.

In Admiralty. Libels by Fiorita & Amoroso and by the Lemon Importing Company, Inc., against the Cunard Steamship Company. Decree for libelant in first case, and libel in latter case dismissed.

Kelly & Blinn, of New York City (Eugene E. Kelly, of New York City, of counsel), for libelants.

Lord, Day & Lord, of New York City (Franklin Grady, of New York City, of counsel), for respondent.

WARD, Circuit Judge. These two cases were tried together, and were brought to recover for damages to boxes of lemons shipped on the steamer Wilton at Messina and Palermo, and delivered at New York.

[1] The bills of lading received by the shippers were on the forms of the Cunard Company, which shipped the lemons in Italy, delivered them at New York, and charged and collected the freight. The company referred to throughout the bills of lading is the Cunard Company. The shippers were never informed by that company that it was acting as an agent in the premises; indeed, the counsel for the company admitted at the trial that the alleged agency was a state secret, and no proof of the agency was offered. Under the circumstances, to require the libelants to prove who signed the bills of lading, a fact entirely within the knowledge of the respondent, and to refer them to an undisclosed principal, would be unjust in the highest degree.

The lemons were stowed in 22 tiers high, without using any boards from time to time between the tiers, so as to distribute the pressure. The boxes comprising the first 17 tiers came out in good condition, but those in the remaining 5 tiers were crushed and broken. Obviously it was the weight of the upper tiers which produced this result. Likewise, when the boxes were discharged, they were piled on the wharf 14 to 16 tiers high, without the use of any planking to distribute the weight, which caused further damage. The usual breakage in lemon cargoes is from 3 to 5 per cent., while in this case it is admitted that the breakage was far greater. As all the boxes in the lower tiers were crushed, I attach little importance to the respondent's effort to show that the boxes of the libelants were unusually frail.

The libelants allege that the respondent's coopers, in recoopering the damaged boxes, filled up those that were partly empty with lemons taken in baskets out of the holds, without any reference to size, quality, or brand, so that persons who purchased at the auction sale, relying on the samples shown, refused to accept these boxes when tendered, and they had to be resold at a loss.

[2] The respondent, while denying that it

is bound by the bill of lading at all, relies upon the following exception as a defense: "The act of God, the king's enemies, * * * breakage, * * * insufficiency in strength of wrappers and packages and all injury to the same, * * * whether any of the perils, causes, or things above mentioned, or the loss or injury arising therefrom, be occasioned by the wrongful act, the fault, negligence or error in judgment of the owners, pilot, master, officers, crews, stevedores, or other persons whomsoever in the service of the company or its agents * * * always excepted."

This clause is to be treated as null, void, and of no effect under the first and second sections of the Harter Act. Laws 1893, c. 105, 27 Stat. p. 435 (Comp. St. §§ 8029, 8030). And, if it were not, still the respondent, having by bad stowage contributed to the damage, could not avail of it. In Liverpool Steamship Co. v. Phenix Insurance Co., 129 U. S. 397, 9 S. Ct. 469, 32 L. Ed. 788, Mr. Justice Gray said at page 438 (9 S. Ct. 471):

"But the ordinary contract of a carrier does involve an obligation on his part to use due care and skill in navigating the vessel and carrying the goods, and, as is everywhere held, an exception, in the bill of lading, of perils of the sea or other specified perils does not excuse him from that obligation, or exempt him from liability for loss or damage from one of those perils to which the negligence of himself or his servants has contributed. New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344 [12 L. Ed. 465]; Express Co. v. Kountze, 8 Wall. 342 [19 L. Ed. 457]; Transportation Co. v. Downer, 11 Wall. 129 [20 L. Ed. 160]; Grill v. General Iron Screw Co., L. R. 1 C. P. 600, and L. R. 3 C. P. 476; The Xantho, 12 App. Cas. 503, 510, 515."

[3] The respondent next relies upon the following clause, stamped upon the bill of lading for 1,775 boxes in the first cause of action in the Fiorita Case: "——— to packages being exceedingly ———, shippers agree that no claim shall be made against shipowners for shortage of packages or cost of cooperage."

Assuming that the words "owing" and "frail" have been inadvertently omitted, I think this clause must be read as applying to claims wholly due to insufficiency of the package and not to claims for damage to which the carrier has contributed by bad stowage.

There is a similar clause stamped on the bill of lading in the fifth cause of action; but that is expressly waived in the forty-ninth article of the answer.

[4] The respondent further relies upon the following exception in the bill of lading: "And that the company is not liable for any * * * claims of which notice has not been given before the removal of the goods. * * *"

[5] This does not require notice in writing, but does require that the notice shall be not merely of damage, but of intention to claim payment of damage. The St. Hubert, 107 F. 727, 46 C. C. A. 603; The Westminster, 127 F. 680, 62 C. C. A. 406; The Persiana, 185 F. 396, 107 C. C. A. 416; The San Guglielmo, 249 F. 588, 161 C. C. A. 514; The General G. W. Goethals (D. C.) 298 F. 933, 1923 A. M. C. 688.

While the refusal of the respondent to permit the truckmen to make any notation of damage, when they receipted for boxes in the delivery book, makes that book valueless as proof that the packages receipted for were in good order, it does not establish that any notice of claim to recover for damages was given. But I find that Amoroso, in the Fiorita Case, did notify Shaw, in charge of the west-bound freight department, and Meyers, the dock superintendent, the next day after the first auction sale, that he did and would claim to recover for damages, which was enough to comply with the requirement of the exception. But, in the Lemon Importing Company Case, the testimony of Marino, vice president, does not prove compliance with the requirement by that company.

There is a dispute in the Fiorita Case as to an overpayment for wharfage while the boxes remained on the pier. The evidence on the subject is very unsatisfactory, and I shall hold in the first instance that the charge was an incident of the maritime contract of carriage and delivery, so that it may go to the commissioner for further investigation.

The libelant in the Fiorita Case may take the usual interlocutory decree. The libel in the Lemon Importing Company Case is dismissed, but, under the circumstances, without costs.